FERRIS and others *v.* GIBSON.

A testator making his will and dying before the revised statutes (1830) devised houses to his grand-daughter H. " her heirs and assigns to her and their sole and only use for ever." Also, he bequeathed to her some stock; and named a trustee to receive the rents and dividends and apply the same to her education and maintenance until she should attain 21 years or be married and in either of which events " the houses and stock are to be at her own disposal." The devise was followed by these words: " And in case my said grand-daughter shall die without leaving lawful issue, then and in such case I give, devise and bequeath the said houses, &c. to my daughters A. E. and S. their heirs and assigns for ever :" *Held*, that the limitation over was too remote and, therefore, void; and that the granddaughter H. took and could convey an absolute fee.

BILL for specific performance and the goodness of title *to* the premises sold, being No. 162, Spring street, New York, dependent on clauses in the will of George Wragg.

The will was made on the thirty-first day of January one thousand eight hundred and twenty-five; and the testator had died and his will was proved in the same year.

The following are such clauses: " Item. I give and devise to my grand-daughter Hannah Barrahclough, the daughter of William Barrahclough, by my daughter Hannah his late wife, now deceased, the three following houses and lots of ground in the eighth ward of the city of New York on the southerly side of Spring street, commencing at the corner of Thompson and Spring streets, containing on Spring street about sixty-two feet and on Thompson street about sixty-nine feet, be the same more or less and which said three houses are now known and distinguished as numbers 158, 160 and 162 Spring street; and, also, one lot of ground on the southerly side of Beach street, between Varick and Chapel streets in the fifth ward of the city of New York, to have and to hold the same three houses and four lots of ground to my said grand-daughter Hannah Barraclough her heirs and assigns to her and their sole use for ever. Item. I give, devise and bequeath to my said grand-daughter Hannah Barraclough forty shares of the stock of the

Oct. 29.
1846.

*Will.
Devise.
Limita-
tion.
Remote-
ness.*

North River Bank in the city of New York, now standing in my name and, also, twenty-five shares of the stock of the Chemical Bank in the city of New York now, also, standing in my name. And I hereby nominate, constitute and appoint her father, the said William Barraclough, her trustee to receive the rents, dividends and income of the said houses, lots of ground and stock; and to apply the same to the education, maintenance and support of my said grand-daughter until she attains the age of · twenty-one years or is married—and in either of which events, the said houses, lots of ground and stock are to be at her own dis-posal. And in case my said grand-daughter shall die with-out having lawful issue, then and in such case, I give, de-vise and bequeath the said houses, lots of ground and stock to my said daughters Ann, Elizabeth and Sarah, their heirs, executors, administrators and assigns share and share alike for ever; and if any or either of my said children shall die before me leaving lawful issue, then and in such case such child or children shall have and take the share of his, her or their mother in the same manner as such mother would have done had she survived me under this my last will. And I hereby expressly declare, order and direct that every devise, legacy and bequest under this my will given, de-vised and bequeathed to my said daughters and grand-daughter shall not be at any time, subject to the manage-ment or control, debts or engagements of any present or future husband or husbands and that the receipt of each and every of my said daughters and grand-daughter shall, in all cases whatever, nothwithstanding coverture, be good and sufficient discharge to my executors and executrix hereinafter named and to every other person and persons whatever to whom the same may be given."

Mr. *Bidwell*, for the complainants.

Mr. *Thomas Warner*, for the defendant.

THE VICE-CHANCELLOR :—The will in question was made and took effect, by the death of the testator, anterior to the revised statutes. Of course, it is governed by the

rules of law as they existed before and not by such statutes.

This will, in the first place, devises the property in question to the grand-daughter Hannah, now Mrs. Ferris, "her heirs and assigns to her and their sole and only use for ever." This is as absolute a devise in fee as words can express. But in the next clause of the will are these words: "And in case my said grand-daughter shall die without leaving lawful issue, then and in such case I give, devise and bequeath the said houses and lots, &c. to my daughters Ann, Elizabeth and Sarah their heirs and assigns for ever." The question is, upon the effect and validity of this limitation over, in the event of his grand-daughter dying without leaving lawful issue?

It is well settled that such words are to be understood as applicable to an indefinite failure of issue at the death of the first taker; and, hence, that the contingency on which the limitation over is to take effect is too remote and, for that reason, the gift over is void. The case of *Patterson* v. *Ellis*, in Error, 11 Wend. R. 259, adjudicates this point; and determines that the courts are bound to give that construction to the very same words used in this will. The subsequent case of *Macomb* v. *Miller*, 9 Paige's C. R. 265; S. C. in Error, 26 Wend. R. 229, is to the same effect. These cases are decisive of the present, unless, indeed, there are words in this will to control the, otherwise, legal meaning and to show that the testator certainly meant the limitation over to take effect on a failure of issue at the death of his grand-daughter and not afterwards. The naming of his three daughters as the persons to take, it is said, does show that such was his meaning: because it is unreasonable to suppose that the testator looked forward to a more remote event than the death of his grand-daughter, when three of his own daughters should take the property. And the case of *Roe* v. *Jeffery*, 7 T. R. 589, is cited as bearing on this point. But it will be seen, by looking into that case, that the gift over was of life estates only, as well as to persons in existence; and that circumstance Lord Kenyon deemed a sufficient indication of an intention to confine the failure of issue to the death of the first taker. In the will in question

the gift over is not in life estates or of any particular estate to his three daughters, as if he supposed it at all probable they would personally enjoy the benefit of the gift, but, on the contrary, the gift is to them in the most enlarged and general terms as tenants in common in fee, as if he expected their heirs and assigns, at any future time, however remote, to take whenever there should happen to be a failure of issue of his grand-daughter. There is nothing in the will, therefore, to take it out of the rule which had become fixed and firmly established as a technical rule of the common law, by a long line of judicial decisions upon the words " dying without issue," or "dying without leaving issue," as meaning an indefinite failure of issue and, therefore, too remote to found even an executory devise over upon.

In the revision of our statutes, this rule of construction has very wisely been changed and rendered much more agreeable to reason and common sense: 1 R. S. 724, § 22. But the statutory provision is inapplicable to wills which were in force before it was adopted.

There is another objection to this limitation over to the daughters of the testator, besides the one I have been considering ; and which, I consider, is well founded. In the gift to his grand-daughter, of the houses and lots in question and of certain bank stocks, the testator, by his will, appoints a trustee to receive the rents and dividends and to apply the same to her education and maintenance until she should attain the age of twenty-one years or be married and in either of which events he declares " the houses and lots and stock are to be at her own disposal." Now, this power of disposal is a power of alienation, importing an absolute ownership repugnant to the limitation over and destructive of it. It cannot, therefore, be allowed to have any effect according to the principles and rules of law recognized by our courts in *Jackson* v. *Bell*, 10 J. R. 19, and cases subsequently decided.

As I have no doubt of the absolute ownership of Mrs. Ferris and of the ability of her husband herself to convey a good title to the defendant as a purchaser, I must decree a specific performance, with costs.