#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1855, AT BOSTON.

#### PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, } Justices.
Hon. BENJAMIN F. THOMAS.

---

## PROPRIETORS OF THE CHURCH IN BRATTLE SQUARE *vs.* MOSES GRANT & others.

A limitation, by way of executory devise, which may possibly not take effect within the term of a life or lives in being at the death of the testator, and twenty one years (adding, in case of a child then *en ventre sa mere*, about nine months) afterwards, is void, as too remote, and tending to create a perpetuity.

A devise, subject to a conditional limitation void for remoteness, vests an absolute estate in the first taker.

A house and land were devised to the deacons of a church, and 'their successors, forever, "upon this express condition and limitation, that is to say, that the minister or eldest minister of said church shall constantly reside and dwell in said house, during such time as he is minister of said church; and in case the same is not improved for this use only, I then declare this bequest to be void and of no force, and order that said house

and land then revert to my estate, and I give the same to my nephew J. H. and to his heirs forever." *Held*, that the devise over to J. H. and his heirs was a conditional limitation, and not upon condition; that it was void as being too remote; and that the deacons and their successors took an absolute estate in fee.

BILL IN EQUITY by the Proprietors of the Church in Brattle Square, praying for leave to sell the parsonage house in Court Street, held by them under the following devise in the will of Lydia Hancock: " I give and bequeath unto Messrs. Timothy Newell, Isaac Smith and Ebenezer Storer, present deacons of the Church of Christ in Brattle Street in Boston, whereof the Rev. Mr. Samuel Cooper is minister, and to their successors in that office, all that brick dwelling-house and land situated in Queen Street, lately improved by my honored father, Daniel Henchman, Esquire, as his mansion house, to hold the same, at and immediately upon the decease of my mother, unto the said Timothy Newell, Isaac Smith and Ebenezer Storer, and to the deacons of the said church for the time being, forever, upon this express condition and limitation, that is to say, that the minister or eldest minister of said church shall constantly reside and dwell in said house, during such time as he is minister of said church ; and in case the same is not improved for this use only, I then declare this bequest to be void and of no force, and order that said house and land then revert to my estate, and I give the same to my nephew, John Hancock, Esquire, and to his heirs forever." The said John Hancock was also made residuary devisee. The will was dated October 30th 1765, and proved in the probate court on the 21st of November 1777.

The bill alleged that from the decease of Mrs. Hancock the minister or eldest minister of said church had constantly dwelt and resided in said house, during such time as he was minister of said church, and the house and land had been improved for that use only ; that the sum assessed for taxes upon said estate had been and was continually increasing, and the estate required, and would from time to time require, the expenditure of large sums of money to keep it in repair ; that a sale of the estate was necessary to the beneficial accomplishment of the intent of the devise ; that the present deacons of the church, who now

hold the legal estate in the premises, were unwilling to join in making sale thereof without the sanction and decree of this court, because John Hancock and others, heirs at law of the John Hancock named in the will, pretended that the estate was devised upon the limitation and condition that the minister or eldest minister of said church should constantly dwell and reside in said house during such time as he should be minister of said church, and that in case the same should not be improved for that use only, the testatrix ordered that the said house and land should revert to her estate, and gave and devised the same to the said John Hancock and to his heirs forever, and so, if the said house and land should be sold, the same would be forfeited and would revert to the heirs of the said John Hancock; but the plaintiffs charged the contrary thereof to be the truth, and that the devise was not upon any such condition or limitation, and that the supposed devise over to said Hancock was altogether void and of no effect; and that, if any forfeiture of said estate could or should at any time be worked, the legal title would not vest in the heirs of said John Hancock, but in certain other persons, heirs at law of the testatrix; and that if the estate should, in the opinion of this court, be deemed to have been devised and to be still holden by said deacons upon any such limitation or condition, a sale of the estate had become necessary and expedient to effect the objects of the trust, as contemplated by the testatrix.

The deacons and minister of the church, John Hancock and others, heirs of John Hancock named in the will, and the heirs at law of the testatrix, were made parties to the bill. The bill prayed for a discovery, for a decree for a sale of the estate and an investment and application of the proceeds in such manner as should best effect the objects of the trust, and for further relief.

John Hancock and William H. Spear, two of the heirs at law of John Hancock named in the will, filed answers, in which they alleged that the condition and limitation of the devise under · which the plaintiffs held was valid; two other heirs of said John Hancock demurred on the ground that they were improperly made parties; and all the other defendants suffered the bill to be taken for confessed.

The case was argued at March term 1853, by *C. B. Goodrich & I. J. Austin,* for the plaintiffs, and *C. L. Hancock,* for the defendant Hancock.

BIGELOW, J. The interesting and important questions involved in the present case are now for the first time brought to our consideration. In a suit in equity between the same parties which was pending several years ago in this court, we were not called upon to give any construction to the clause in the will of Lydia Hancock, under which the deacons of the church in Brattle Square and their successors hold the estate now in controversy. The object of that suit was widely different from that of the present. The plaintiffs then assumed, by implication, that they were bound by the " condition and limitation " annexed to the devise, and the validity of the gift over on breach of the condition was not called in question by them. The single purpose then sought to be accomplished was to obtain authority to sell the estate, solely on the ground that, from various causes, the occupation and use of the premises for a private dwelling, and especially for a parsonage, in the manner prescribed in the will, had become onerous and impracticable; and the prayer of the bill was that, if a sale was authorized, the proceeds might be invested in other real estate, to be held on the same trusts and upon the like condition and limitation as are set out and prescribed in the will of the testatrix, relative to the estate therein devised to the deacons and their successors. It is quite obvious that, on a bill thus framed, no question could arise concerning the respective titles of the parties to the suit, under the devise. They were not put in issue by the pleadings, and no decision was in fact made in regard to them. That suit was determined solely upon the ground that the case made by the plaintiffs was not such as to warrant the court in making a decree for a sale of the premises upon the reasons and for the causes alleged in that bill, and above stated.

The case is now brought before us upon allegations and denials which directly involve the construction of the devise, and render it necessary to determine the respective rights of the devisees and heirs at law to the estate in controversy. In order to

decide the questions thus raised, it is material to ascertain, in the outset, the legal nature and quality of the estate which is created by the terms of the devise to Timothy Newell and others, deacons of the church in Brattle Street. If the gift had been solely to the deacons of the church in Brattle Street and their successors forever, without any condition annexed thereto concerning its use and occupation, it would, without doubt, have vested in them the absolute legal estate in fee. By the provincial statute of 28 G. 2, which was in force at the time of the death of the testatrix, the deacons of all Protestant churches were made bodies corporate, with power to take in succession all grants and donations, both of real and personal estate. Anc. Chart. 605. The words of the devise were apt and sufficient to create a fee in the deacons and their successors, and they were legally competent to take and hold such an estate. It therefore becomes necessary to consider the nature and effect of the condition annexed to the gift; how far it qualifies the fee devised to the deacons and their successors ; and what was the interest or estate devised over to John Hancock and his heirs forever, upon a failure to comply with and perform the condition. It will aid in the solution of these questions, if we are able in the first place to determine, with clearness and accuracy, within what class or division of conditional and contingent estates the devise in question falls.

Strictly speaking, and using words in their precise legal import, the devise in question does not create simply an estate on condition. By the common law, a condition annexed to real estate could be reserved only to the grantor or devisor, and his heirs. Upon a breach of the condition, the estate of the grantee or devisee was not *ipso facto* terminated, but the law permitted it to continue beyond the time when the contingency upon which it was given or granted happened, and until an entry or claim was made by the grantor or his heirs, or the heirs of the devisor, who alone had the right to take advantage of a breach. 2 Bl. Com. 156. 4 Kent Com. (6th ed.) 122, 127. Hence arose the distinction between a condition and a conditional limitation. A condition, followed by a limitation over to a third person in cas

the condition be not fulfilled, or there be a breach of it, is termed a conditional limitation. A condition determines an estate after breach, upon entry or claim by the grantor or his heirs, or the heirs of the devisor. A limitation marks the period which determines the estate, without any act on the part of him who has the next expectant interest. Upon the happening of the prescribed contingency, the estate first limited comes at once to an end, and the subsequent estate arises. If it were otherwise, it would be in the power of the heir to defeat the limitation over, by neglecting or refusing to enter for breach of the condition. This distinction was originally introduced in the case of wills, to get rid of the embarrassment arising from the rule of the ancient common law, that an estate could not be limited to a stranger, upon an event which went to abridge or destroy an estate previously limited. A conditional limitation is therefore of a mixed nature, partaking both of a condition and of a limitation; of a condition, because it defeats the estate previously limited; and of a limitation, because, upon the happening of the contingency, the estate passes to the person having the next expectant interest, without entry or claim.

There is a further distinction in the nature of estates on condition, and those created by conditional limitation, which it may be material to notice. Where an estate in fee is created on condition, the entire interest does not pass out of the grantor by the same instrument or conveyance. All that remains, after the gift or grant takes effect, continues in the grantor, and goes to his heirs. This is the right of entry, as we have already seen, which, from the nature of the grant, is reserved to the grantor and his heirs only, and which gives them the right to enter as of their old estate, upon the breach of the condition. This possibility of reverter, as it is termed, arises in the grantor or devisor immediately on the creation of the conditional estate. It is otherwise where the estate in fee is limited over to a third person in case of a breach of the condition. Then the entire estate, by the same instrument, passes out of the grantor or devisor. The first estate vests immediately, but the expectant interest does not take effect until the happening of the

contingency upon which it was limited to arise. But both owe their existence to the same grant or gift; they are created *uno flatu ;* and being an ultimate disposition of the entire fee, as well after as before the breach of the condition, there is nothing left in the grantor or devisor or his heirs. The right or possibility of reverter, which, on the creation of an estate in fee on condition merely, would remain in him, is given over by the limitation which is to take effect on the breach of the condition.

One material difference therefore, between an estate in fee on condition and on a conditional limitation, is briefly this; that the former leaves in the grantor a vested right, which, by its very nature, is reserved to him, as a present existing interest, transmissible to his heirs; while the latter passes the whole interest of the grantor at once, and creates an estate to arise and vest in a third person, upon a contingency, at a future and uncertain period of time. A grant of a fee on condition only creates an estate of a base or determinable nature in the grantee, leaving the right or possibility of reverter vested in the grantor. Such an interest or right in the grantor, as it does not arise and take effect upon a future uncertain or remote contingency, is not liable to the objection of violating the rule against perpetuities, in the same degree with other conditional and contingent interests in real estate of an executory character. The possibility of reverter, being a vested interest in real property, is capable at all times of being released to the person holding the estate on condition, or his grantee, and, if so released, vests an absolute and indefeasible title thereto. The grant or devise of a fee on condition does not therefore fetter and tie up estates, so as to prevent their alienation, and thus contravene the policy of the law which aims to secure the free and unembarrassed disposition of real property. It is otherwise with gifts or grants of estates in fee, with limitations over upon a condition or event of an uncertain or indeterminate nature. The limitation over being executory, and depending on a condition, or an event which may never happen, passes no vested interest or estate. It is impossible to ascertain in whom the ultimate right to the estate may vest, or whether it will ever vest at all, and therefore no conveyance or mode of

alienation can pass an absolute title, because it is wholly uncertain in whom the estate will vest on the happening of the event or breach of the condition upon which the ulterior gift is to take effect.

Bearing in mind these distinctions, it is obvious that the devise in question was not the gift of an estate on a condition merely, but it also created a limitation over, on the happening of the prescribed contingency, to a third person and his heirs forever. It was therefore a conditional limitation, under which general head or division may be comprehended every limitation which is to vest an interest in a third person, on condition, or upon an event which may or may not happen. Such limitations include certain estates in remainder, as well as gifts and grants, which, when made by will, are termed executory devises, and when contained in conveyances to uses, assume the name of springing or shifting uses. 1 Preston on Estates, §§ 40, 41, 93. 4 Kent Com. (6th ed.) 128, *note.* 2 Fearne Cont. Rem. (10th ed.) 50. 1 Pow. Dev. 192, *& note* 4. 1 Shep. Touch. 126.

That the devise in question does not create a contingent remainder in John Hancock and his heirs is very clear, upon familiar and well established principles. There is, in the first place, no particular estate upon the natural determination of which the limitation over is to take effect. The essence of a remainder is, that it is to arise immediately on the termination of the particular estate by lapse of time or other determinate event, and not in abridgment of it. Thus a devise to A for twenty years, remainder to B in fee, is the most simple illustration of a particular estate and a remainder. The limitation over does not arise and take effect until the expiration of the period of twenty years, when the particular estate comes to an end by its own limitation. So a gift to A until C returns from Rome, and then to B in fee, constitutes a valid remainder, because the particular estate, not being a fee, is made to determine upon a fixed and definite event, upon the happening of which it comes to its natural termination. But if a gift be to A and his heirs till C returns from Rome, then to B in fee, the limitation over is not good as a remainder, because the precedent estate, being an

estate in fee, is abridged and brought to an abrupt termination by the gift over on the prescribed contingency. One of the tests, therefore, by which to distinguish between estates in remainder and other contingent and conditional interests in real property, is, that where the event, which gives birth to the ulterior limitation, determines and breaks off the preceding estate before its natural termination, or operates to abridge it, the limitation over does not create a remainder, because it does not wait for the regular expiration of the preceding estate. 1 Jarman on Wills, 780. 4 Kent Com. 197. Besides; wherever the gift is of a fee, there cannot be a remainder, although the fee may be a qualified or determinable one. The fee is the whole estate. When once granted, there is nothing left in the donor but a possibility or right of reverter, which does not constitute an actual estate. 4 Kent Com. 10, *note. Martin v. Strachan*, 5 T. R. 107, *note.* 1 Jarman on Wills, 792. All the estate vests in the first grantee, notwithstanding the qualification annexed to it. If, therefore, the prior gift or grant be of a fee, there can be neither particular estate nor remainder; there is no particular estate, which is an estate less than a fee; and no remainder, because, the fee being exhausted by the prior gift, there is nothing left of it to constitute a remainder. Until the happening of the contingency, or a breach of the condition by which the precedent estate is determined, it retains all the characteristics and qualities of an estate in fee. Although defeasible, it is still an estate in fee. The prior estate may continue forever, it being an estate of inheritance, and liable only to determine on an event which may never happen. For this reason, the rule of the common law was established, that a remainder could not be limited after a fee. In the present case, the devise was, as we have already stated, a gift to the deacons and their successors forever; and they being by statute a quasi corporation, empowered to take and hold grants in fee, it vested in them, *ex vi termini*, an estate in fee, qualified and determinable by a failure to comply with the prescribed condition. The limitation over, therefore, to John Hancock and his heirs could not take effect as a remainder.

It necessarily results from these views of the nature and qual-

ity of conditional and contingent estates, as applicable to the devise in question, that the limitation of the estate over to John Hancock and his heirs, after the devise in fee to the deacons and their successors, is a conditional limitation, and must take effect, if at all, as an executory devise. The original purpose of executory devises was to carry into effect the will of the testator, and give effect to limitations over, which could not operate as contingent remainders, by the rules of the common law. Indeed, the general and comprehensive definition of an executory devise is a limitation by will of a future estate or interest 'in land, which cannot, consistently with the rules of law, take effect as a remainder. Every devise to a person in derogation of, or substitution for, a preceding estate in fee simple, is an executory devise. 4 Kent Com. 264. 1 Jarman on Wills, 778. Lewis on Perp. 72. 6 Cruise Dig. tit. 38, *c.* 17, §§ 1, 2. *Purefoy* v. *Rogers.* 2 Saund. 388 *a, & note.* Thus a limitation to A and his heirs, and if he die under the age of twenty one years, then to B and his heirs, is an executory devise, because it is a limitation of an estate over after an estate in fee. This, by the rules of the ancient common law, would have been void, for the reason that they did not permit any limitation over after the grant of a previous fee. Whenever, therefore, a devisor disposes of the whole fee in an estate to one person, but qualifies this disposition, by giving the estate over, upon breach of a condition, or happening of a contingency, to some other person, this creates an executory devise. 4 Kent Com. 268. 6 Cruise Dig. tit. 38, *c.* 17, § 2. Bac. Ab. Devise, I. 1 Fearne Cont. Rem. 399.

In the case at bar, the devise is to the deacons and their successors in this office forever. By itself, this gave to them an absolute estate in fee simple; but the gift in fee was qualified and abridged by the condition annexed, and by the limitation over to John Hancock and his heirs. From the rules and principles which we have been considering, it would seem to be very clear that the devise in question did not create an estate on condition, because the entire fee passed out of the devisor by the will: no right of entry for breach of the condition was reserved, either directly or by implication, to herself or her heirs, but upon

the prescribed contingency it was devised over to a third person in fee. It did not create an estate in remainder, because there was no particular estate which was first to be determined by its own limitation before the gift over took effect, and because, the prior gift being of the entire fee, there was no remainder, inasmuch as the prior estate might continue forever. . It did create an executory devise, because it was a limitation by will of a fee after a fee, which, by the rules of law, could not take effect as a remainder.

This being the nature of the devise to John Hancock and his heirs, it remains to be considered whether there is anything, in the nature of the gift over, which renders it invalid, and if so, the effect of its invalidity upon the prior estate devised to the deacons and their successors. Upon the first branch of this inquiry, the only question raised is, whether the gift over is not made to take effect upon a contingency which is too remote, as violating the well established and salutary rule against perpetuities. Executory devises in their nature tend to perpetuities, because they render the estate inalienable during the period allowed for the contingency to happen, though all mankind should join in the conveyance. They cannot be aliened or barred by any mode of conveyance, whether by fine, recovery or otherwise. 4 Kent Com. 266. 2 Saund. 388 *a, note.* Hence the necessity of fixing some period beyond which such limitations should not be allowed. It has therefore long been the settled rule in England, and adopted as part of the common law of this commonwealth, that all limitations, by way of executory devise, which may not take effect within the term of a life or lives in being at the death of the testator, and twenty one years afterwards, as a term in gross, or, in case of a child *en ventre sa mere,* twenty one years and nine months, are void as too remote, and tending to create perpetuities. 4 Kent Com. 267. 1 Jarman on Wills, 221. 4 Cruise Dig. tit. 32, *c.* 24, § 18. *Nightingale* v. *Burrell,* 15 Pick. 111. See also *Cadell* v. *Palmer,* 1 Cl. & Fin. 372, 421, 423, which contains a very full and elaborate history and discussion of the cases on this subject. In the application of this rule, in order to test the legality of a

limitation, it is not sufficient that it be capable of taking effect within the prescribed period ; it must be so framed as *ex neces-sitate* to take effect, if at all, within that time.   If, therefore, a limitation is made to depend upon an event which may happen immediately after the death of the testator, but which may not occur until after the lapse of the prescribed period, the limitation is void.   The object of the rule is to prevent any limitation which may restrain the alienation of property beyond the pre-cise period within which it must by law take effect.   If the event upon which the limitation over is to take effect may, by possibility, not occur within the allowed period, the executory devise is too remote, and cannot take effect.   *Nightingale* v. *Burrell*, 15 Pick. 111.   4 Kent Com. 283.   6 Cruise Dig. tit. 38, *c.* 17, § 23.   These rules are stated with great precision in 2 At-kinson on Conveyancing, (2d ed.) 264.

The devise over to the heirs of John Hancock is therefore void, as being too remote.   The event upon which the prior estate was to determine, and the gift over take effect, might or might not occur within a life or lives in being at the death of the testatrix, and twenty one years thereafter.   The minister of the church in Brattle Square, it is true, might have ceased con stantly to reside and dwell in the house, and it might have been improved for other purposes, within a year after the decease of the testatrix ; but it is also true that it may be occupied as a parsonage, in the manner prescribed in the will, as it has hither-to been during the past seventy five years, for five hundred or a thousand years to come.   The limitation over is not made to take effect on an event which necessarily must happen at any fixed period of time, or even at all.   It is not dependent on any act or omission of the devisees, over which they might exercise a control.   It is strictly a collateral limitation, to arise at a near or remote period, uncertain and indeterminate, and contingent upon the will of a person who may at any time happen to be clothed with the office of eldest minister of the church in Brattle Square.   It is diffinult to imagine an event more indefinite as to the time at which it may happen, or more uncertain as to the cause to which it is to owe its birth.

The more common cases of limitations by executory devise, which are held void, as contravening the rule against perpetuities, are when property is given over upon an indefinite failure of issue, or to a class of persons answering a particular description, or specifically named; as to the children of A who shall attain the age of twenty five, or to a person possessing a certain qualification, with which he will not be necessarily clothed within the prescribed period. So gifts to take effect upon the extinction of a dignity, by failure of the lives of persons to whom it is descendable; *Bacon* v. *Proctor*, Turn. & Russ. 31; *Mackworth* v. *Hinxman*, 2 Keen, 658; or depending on the contingency of no heir male or other heir of a particular person attaining twenty one, no person being named as answering that description; *Ker* v. *Lord Dungannon*, 1 Dru. & War. 509; are held invalid, as being too remote. So, too, in a case more analogous to the present, where the testator devised lands to trustees, and directed the yearly rents, to a certain amount then fixed and named in the will, to be appropriated for certain charitable purposes; and provided that, in the event of there being a new letting, by which an increase of rents was obtained, the surplus arising from such increase should go to the use and behoof of the person or persons belonging to certain families, who, for the time being, should be lord or lords, lady or ladies, of the manor of Downpatrick; and in case the said families did not protect the charities established by the will, or if the said families should become extinct, then the said surplus rents were to be appropriated to said charities, in addition to the former provisions for the charity; it was held that the gift over of the surplus rents to the trustees for the charity was too remote, as the contingency upon which it was to take effect was not restricted to the proper limits. *Commissioners of Charitable Donations* v. *Baroness De Clifford*, 1 Dru. & War. 245, 253. In this case Lord Chancellor Sugden says: " This is a clear equitable devise of a fee qualified or limited; a fee in the surplus rents for this family, so long as they shall be lords and ladies of the manor of Downpatrick, 'in case,' (and I must here read the words 'in case' as if they were 'whilst,' or 'so long as,') certain persons protect the

almshouse, &c.; and thus the limitation would assume the same character as that which is so familiar to us all, viz: while such a tree shall stand, or the happening of any other indifferent event. Such being my opinion with respect to the estate devised to these families, I must hold the gift over void. The law admits of no gift over, dependent on such an estate; a limitation after it is void, and cannot be supported; otherwise, it would take effect after the time allowed by law." It is difficult to distinguish that case from the one at bar. The contingency of the families neglecting to protect the charities established by the will, in that case, was no more remote than that of the failure or omission of the minister of the church for the time being to reside and dwell in the house, as is prescribed by the will in the present case. Either event might take place within the prescribed period, but it might not until a long time afterwards. It can make no difference in the application of the case cited, that it was the gift of an equitable fee simple, because the limits prescribed to the creation of future estates and interests are the same at law and in equity. Lewis on Perp. 169. 4 Cruise Dig. tit. 32, *c.* 24, § 1. *Duke of Norfolk* v. *Howard*, 1 Vern. 164.

But it is quite unnecessary to seek out analogies to sustain this point, as we have a direct and decisive authority in the case of *Welsh* v. *Foster*, 12 Mass. 97. It was there held, that a limitation, in substance the same as that annexed to the devise in the present case, being made to take effect when the estate should cease to be used for a particular purpose, was void, for the reason that it contravened the rule against perpetuities. That was the case of a grant by deed, with a proviso that the estate was not to vest "until the millpond [on the premises] should cease to be employed for the purpose of carrying any two mill-wheels;" and it was adjudged that the rule was the same as to springing and shifting uses created by deed, as that uniformly applied to executory devises in order to prevent the creation of inalienable estates. The limitation was therefore held invalid, as depending on a contingency too remote.

The true test, by which to ascertain whether a limitation over is void for remoteness, is very simple. It does not depend on

the character or nature of the contingency or event upon which it is to take effect. These may be varied to any extent. But it turns on the single question whether the prescribed contingency or event may not arise until after the time allowed by law, within which the gift over must take effect. Applying this test to the present case, it needs no argument or illustration to show that the devise over to John Hancock and his heirs is upon a contingency which might not occur within any prescribed period, and is therefore void, as being too remote.

The remaining inquiry is as to the effect of the invalidity of the devise over, on account of its remoteness, upon the preceding gift in fee to the deacons and their successors forever. Upon this point we understand the rule to be, that if a limitation over is void by reason of its remoteness, it places all prior gifts in the same situation as if the devise over had been wholly omitted. Therefore a gift of the fee or the entire interest, subject to an executory limitation which is too remote, takes effect as if it had been originally limited free from any devesting gift. The general principle applicable to such cases is, that when a subsequent condition or limitation is void by reason of its being impossible, repugnant or contrary to law, the estate becomes vested in the first taker, discharged of the condition or limitation over, according to the terms in which it was granted or devised; if for life, then it takes effect as a life estate; if in fee, then as a fee simple absolute. 1 Jarman on Wills, 200, 783. Lewis on Perp. 657. 2 Bl. Com. 156. 4 Kent Com. 130. Co. Lit. 206 *a*, 206 *b*, 223 *a*. The reason on which this rule is said to rest is, that when a party has granted or devised an estate, he shall not be allowed to fetter or defeat it, by annexing thereto impossible, illegal or repugnant conditions or limitations. Thus it has been often held, that when land is devised to A in fee, and upon the failure of issue of A, then to B in fee, and the first estate is so limited, that it cannot take effect as an estate tail in A, the limitation over to B is void, as being too remote, because given upon an indefinite failure of issue, and the estate vests absolutely in fee in A, discharged of the limitation over. So it was early held, that where a testator devised all his real and personal estate to his

wife for life, and after her death to his son and his heirs forever, and in case of the death of the son without any heir, then over to the plaintiff in fee, the devise over to the plaintiff was void, and the son took an absolute estate in fee. *Tilbury* v. *Barbut*, 3 Atk. 617. *Tyte* v. *Willis*, Cas. temp. Talb. 1. 1 Fearne Cont. Rem. 445. So, too, if a devise be made to A and his heirs forever, and for want of such heirs then to a stranger in fee, the devise over to the stranger would be void for remoteness, and A would take a fee simple absolute. *Nottingham* v. *Jennings*, 1 P. W. 25. 1 Pow. Dev. 178, 179. 2 Saund. 388 *a, b*. 1 Fearne Cont. Rem. 467. *Attorney General* v. *Gill*, 2 P. W. 369. *Busby* v. *Salter*, 2 Preston's Abstracts, 164. *Kampf* v. *Jones*, 2 Keen, 756. *Ring* v. *Hardwick*, 2 Beav. 352. *Miller* v. *Macomb*, 26 Wend. 229. *Ferris* v. *Gibson*, 4 Edw. Ch. 707. *Tator* v. *Tator*, 4 Barb. 431. *Conklin* v. *Conklin*, 3 Sandf. Ch. 64.

Such indeed is the necessary result which follows from the manner in which executory devises came into being and were engrafted on the stock of the common law. Originally, as has been already stated, no estate could be limited over after a limitation in fee simple, and in such case the estate became absolute in the first taker. This rule was afterwards relaxed in cases of devises, for the purpose of effectuating the intent of testators, so far as to render such gifts valid by way of executory devise, when confined within the limits prescribed to guard against perpetuities. If a testator violated the rule by a limitation over which was too remote, the result was the same as if at common law he had attempted to create a remainder after an estate in fee. The remainder would have been void, and the fee simple absolute would have vested in the first taker. 6 Cruise Dig. tit. 38, *c*. 12, §. 20. Co. Lit. 18 *a*, 271 *b*.

The rule is, therefore, that no estate can be devised to take effect in remainder after an estate in fee simple; but a devise, to vest in derogation of an estate in fee previously devised, may under proper limits be good by way of executory devise. If, after a limitation in fee by will, a disposition is made of an estate to commence on the determination of the estate in fee, the law, except in the case of a devise over to take effect within

the prescribed period, presumes the estate first granted will never end, and therefore regards the subsequent disposition as vain and useless. Shep. Touch. (Preston's ed.) 417. It makes no differ- ence in the application of this rule, that the condition on which the limitation over is made to depend is not *mala in se.* It is sufficient that it is against public policy. Thus in a recent case where estates were limited to A for ninety nine years, if he should so long live, remainder to the heirs male of his body, with a pro- viso that if A did not during his lifetime acquire a certain dig- nity in the peerage, the gift to his heirs male should be void, and the estate should go over to certain other persons, it was held that this conditional limitation was made to depend upon a condition which was against public policy and therefore void, and that the estate vested in the eldest son of A as heir male, discharged of the gift over. *Egerton* v. *Earl Brownlow,* 4 H. L. Cas. 1. So in the case at bar, the limitation over being upon an event which is too remote, and for that reason contrary to the policy of the law, cannot take effect. The estate therefore in the deacons and their successors remains unaffected by the gift over to John Hancock and his heirs. The doctrine on this point is briefly and clearly stated in the Touchstone : " No con- dition or limitation, be it by act executed, limitation of a use, or by devise or last will, that doth contain in it matter repugnant, or matter that is against law, is good. And therefore, in all such cases, if the condition be subsequent, the estate is absolute and the condition void ; " " and the same law is for the most part of limitations, if they be repugnant, or against law, as is of con- ditions" in like cases. Shep. Touch. 129, 133. See also 4 H. L. Cas. 160.

It is undoubtedly true that this construction of the devise defeats the manifest purpose of the testatrix, which was, on a failure to use and occupy the premises as a parsonage in the manner described in the will, to give the estate to John Han- cock and his heirs. But no principle is better settled than that the intent of a testator, however clear, must fail of effect, if it cannot be carried into effect without a violation of the rules of law. 1 Pow. Dev. 388, 389.

It is to be borne in mind, however, in this connection, that the claim set up by the heirs at law of the testatrix to the premises in controversy is in direct contravention of the clear intent of the will, by which they are studiously excluded from any share or interest whatever in this estate. All that she did not specifically devise is given by the residuary clause to John Hancock. Her heirs therefore can claim only by virtue of an arbitrary rule of law; and it certainly more accords with the general intent of the testatrix, that the absolute title in this estate should, by reason of the invalidity of the gift over, be vested in the deacons and their successors, who were manifestly the chief objects of her bounty in this devise, than in her heirs at law, whom she so carefully disinherited. The court will not construe a conditional imitation as a mere condition, and thus defeat the estate first imited, in a mode not contemplated by the testatrix.

Nor can the estate in question pass by the residuary clause. The testatrix having specifically devised the entire estate to the first taker, and upon the happening of the contingency over, to another person, could not have intended to include it in the gift of the residue. She had given away all her estate and interest in the property, and nothing remained to pass by the residuary clause. 2 Pow. Dev. 102–104. *Hayden* v. *Stoughton,* 5 Pick. 538. It is not like a case of a gift on a valid condition, where the right or possibility of reverter remains in the donor or devisor, which would pass under a residuary clause, or in case of intestacy, to the heirs of the donor; but it is the case of a devise in fee on a conditional limitation over, which is void in law. There is therefore no possibility or right of reverter left in the devisor, which can pass to heirs or residuary devisees, and the limitation over being illegal and void, the estate remains in the first takers, discharged of the devesting gift. Nor does it make any difference in the application of this well settled rule of law to the present case, that the testatrix in terms declares that the gift to the deacons and their successors shall be void, if the prescribed condition be not fulfilled. The legal effect of all conditional limitations is to make void and terminate the previous estate upon the happening of the designated contingency, and

to vest the title in those to whom the estate is limited over by the terms of the gift or grant. The clause in the will, therefore, which declares the gift void in the event of a breach of the condition, and directs that the premises shall revert to her estate, does not change the nature of the estate, nor add any force or effect to the condition which it would not have had at law, if no such clause had been inserted in the will. It is simply a conditional limitation. The condition, being accompanied by a limitation over which is void in law, fails of effect, and the estate becomes absolute in the first takers. It could not revert to her estate, because there was no reversion left, the whole estate being limited over by the same devise. Such reversion could only exist in case of a simple condition; as we have already seen ; and no such reverter can take place where the condition is accompanied by a limitation over. Besides, and this perhaps is the more satisfactory view of a devise of this nature, the condition operates only as a limitation, the rule being that when an estate is given over upon breach of a condition, and the same is devised by express words of condition, yet it will be intended as a limitation only. In all cases where a clause in a will operates as a condition to a prior estate, and a limitation over of a new estate, the condition takes effect only as a collateral determination of the prior estate, and not strictly as a condition. Therefore a limitation on a condition or contingency is not a condition ; a clause creating contingent remainders or executory gifts by devise is properly a limitation, and though it be in such terms as to defeat another estate by way of shifting use ˉor executory devise, still it is strictly speaking a limitation. 2 Cruise Dig. tit. 16, *c.* 2, § 30. Shep. Touch. 117, 126. 1 Vent. 202. Carter, 171.

The case of *Austin v. Cambridgeport Parish*, 21 Pick. 215, cited and relied upon by the defendant Hancock, is widely different from the case at bar. That was a grant by deed of an estate, defeasible on a condition subsequent which was legal and valid. The possibility of reverter was in the grantor and his heirs or devisees; the residue of the estate was vested in his grantee, the parish. The two interests united made up the entire fee simpⁱ

estate, and were vested in persons ascertainable and capable of conveying the entire estate. There was nothing, therefore, in that case which resembled a perpetuity, or restrained the alienation of real property. The conditional estate in the parish, and the possibility of reverter in the devisees of the grantor, were vested estates, and interests capable of conveyance, and constituting together an entire title or estate in fee simple. This is very different from an executory devise, where only the conditional estate is vested, and the persons to whom the limitation over is made are uncertain and incapable of being ascertained until the prescribed contingency happens, however remote that event may be. No conveyance of such an estate, by whomsoever made, could vest a good title, because it can never be made certain, until after a breach of the condition, in whom the estate is to vest. Besides; in that case there was nothing illegal or contrary to the policy of the law, in the creation of the estate by the original grantor. The case of *Hayden* v. *Stoughton*, 5 Pick. 528, to which reference has also been made, did not raise any question as to the remoteness of the gift over, because it there vested, according to the construction given to the will, within twenty years from the death of the testator, and therefore within the prescribed period. In the case of *Brigham* v. *Shattuck*, 10 Pick. 306, the court expressly avoid any decision on the validity of the devise over, and decide the case upon the ground that the demandant had no title to the premises in controversy.

The result, therefore, to which we have arrived on the whole case is, that the gift over to John Hancock is an executory devise, void for remoteness; and that the estate, upon breach of the prescribed condition, would not pass to John Hancock and his heirs, by virtue of the residuary clause, nor would it vest in the heirs at law of the testatrix. But being an estate in fee in the deacons and their successors, and the gift over being void, as contrary to the policy of the law, by reason of violating the rule against perpetuities, the title became absolute, as a vested remainder in fee, after the decease of the mother of the testatrix, in the deacons and their successors, and they hold it in fee simple, free from the devesting limitation.

A decree may therefore be entered for the sale of the estate, as prayed for in the bill, and for a reinvestment of the proceeds for the objects and purposes intended to be effected by the trusts declared in the will respecting the property in question.