THE CITY NATIONAL BANK, ADMINISTRATOR, *vs.* THE CITY OF BRIDGEPORT ET ALS.

Third Judicial District, Bridgeport, April Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND JENNINGS, Js.

Argued April 17th—decided July 25th, 1929.

TO ALL PEOPLE TO WHOM THESE PRESENTS SHALL COME, GREETING—

Know ye, that we, Josiah Lacey, Salmon Hubbell and Elenor Hubbell all of Stratford in Fairfield County—Executors of the last will and testament of Amos Hubbell late of said Stratford, deceased, acting as executors aforesaid by order of the court of Probate for Stratford District to us made, authorizing and directing us to sell

lands belonging to the real estate of the said Amos for the payment of debts, against said estate and for the consideration of one-hundred and ninety-three dollars credited on a certain subscription by the said Amos made while in full life for the purpose of purchasing a lot and building a house of public Worship thereon within the limits of the Borough of Bridgeport—And I, Richard Hubbell of Fairfield, in said County, in my own right for the consideration of ninety six dollars and fifty cents received of Josiah Lacey Esqr. of said Stratford and for the sum of ninety six dollars and fifty cents both which last mentioned sums are credited on my subscription for the purpose of purchasing a lot and building a house for public worship within the limits of said Borough—said subscription being originally made in behalf of said Lacey as well as myself which said several sums being received in manner above stated to the full satisfaction of us, the said Josiah, Salmon, Eleanor and Richard, We the said Josiah, Salmon, Eleanor as executors aforesaid, and I, the said Richard, in my own right do by these presents, give, grant, bargain, sell and confirm unto the Warden Burgesses, and freemen of the Borough of Bridgeport in said Fairfield County and to their successors by whatever name they may be called and known hereafter, forever, one certain piece or parcel of land lying and being situated in said Borough, bounded Southerly, Westwardly and Northerly on land left for highway and Eastwardly on land of the heirs of said Amos Hubbell being one hundred and thirty five feet in length from its Southern to its Northern limits throughout and seventy eight feet in width from its Eastern to its Western limits throughout containing thirty-eight rods and six tenths of a rod with a meeting house erected thereon—that is to say we the said Josiah, Salmon and Eleanor as executors aforesaid do give, grant, sell and confirm one undivided moiety of said described premises as belonging to the estate of said deceased, and I, the said Richard do in my own right give, grant, sell and confirm the other undivided moiety of said described premises with all the appurtenances and privileges thereof as aforedescribed—to have and to hold the above granted and bargained premises with the appurtenances thereof unto the said Warden Burgesses and freemen and their successors by whatever they may be called and known forever in trust for and to the use of the said Josiah Lacey, Salmon Hubbell, Eleanor Hubbell, Richard Hubbell, Lambert Lockwood, and Silas Sherman, Stephen Burroughs, Junr., Abijah Hawley, Ezekiel Hubbell Stephen Summers, Junr., all of said Bridgeport and others associated for the purpose of erecting thereon a House until said house (now erected) shall be floored then in trust for, and to the use of the local Presbyterian Congregational

Consociated Church and Society within which said described premises are situated (now the parish of Stratfield) for the purpose of holding public worship therein, so soon as the same may be rendered convenient therefor, provided said Society will and do within a reasonable time accept of said house for the purpose of holding public worship therein at least one half of the usual public exercises of religion in said Society and take all necessary steps and measures that they may legally do the sale—But if said Society for an unreasonable length of time shall refuse and neglect to accept said house in such manner and for such purposes as are above stated and under the conditions aforesaid—or if having once accepted said house shall afterwards or for an unreasonable length of time neglect to comply with the aforesaid terms and conditions, or if said Society shall by any means, or in any way be dissolved, or cease as a body corporate to support the exercises of religion in such house, or in case of destruction of said house in another house to be by said Society on the same ground erected Then to have and to hold in trust for and to the use of all such inhabitants of the Town of Stratford & Fairfield as may or shall from time to time associate themselves together for the purpose of maintaining public worship according to the rites, forms and discipline of the Presbyterian Churches in the United States in said house, or on said ground in another house then and there to be built in case of the destruction of the present, and if there shall be no such inhabitants of either of said towns who may associate and occupy said house or ground in the manner and for the purpose last mentioned, then to revert back to the use and behoof of the original grantors, their heirs and assigns. And furthermore we the said Richard Hubbell for myself, my heirs, executors and administrators and the said executors of the said Amos as executors aforesaid do covenant with the Warden Burgesses and freemen and their successors that from and after the ensealing these premises that neither I the said Richard Hubbell nor the said executors or any claiming under me or them will have and claim no right, claim or demand on the above granted and bargained premises so long as the same is used for the purposes mentioned in said deed,

534

*David S. Day* and *Vincent L. Keating*, with whom was *Samuel F. Beardsley*, for the appellants (the defendants The United Congregational Society and The First Congregational Society).

*James C. Shannon*, with whom were *Frank L. Wilder* and *Irving Elson*, for the appellee (plaintiff).

HINMAN, J. A former action relating to the same property as is here involved (*First Congregational Society* v. *Bridgeport*, 99 Conn. 22, 121 Atl. 77), brought in 1920, included a prayer that the court determine and settle the title thereto, and two of the heirs of Amos Hubbell, as defendants therein, alleged that the plaintiff had violated the provisions of the deed and abandoned the property, and that the land, by the terms of the deed, reverted to them as such heirs, and prayed a decree vesting the title in them. As to this issue the trial court concluded, upon the facts found as of that time, that neither the plaintiff nor its predecessors, nor The United Congregational Society had abandoned the property or failed to carry out the provisions of the deed, but had conformed thereto, and adjudged, under this prayer for relief, that the title to the land was "in The United Congregational Society as trustee, for the use and benefit of its members and of all those persons of The First Congregational Society . . . associated with it for the maintenance and support of the exercises of religion in the City of Bridgeport." This portion of the judgment was not appealed from, the appeal to this court relating only

to the denial of the further relief sought by way of a sale of the real estate and substitution of the proceeds as trust property for the benefit of the plaintiff. *First Congregational Society* v. *Bridgeport, supra.*

In the present action the court, upon the facts found as to present conditions, accruing since the trial of the former case, as summarized in the foregoing statement, concluded that the defendants The United Congregational Society and The First Congregational Society have now ceased to use the premises for the purposes provided in the deed, and held that, in consequence, the title to the premises reverts to the heirs and assigns of Richard and Amos Hubbell. In view of the finding in the former action that there had been no abandonment, at that time, of the use of the land for church purposes it is clear that there was no occasion for determining, therein, the effect upon the title to the property of such abandonment as is now found to have occurred (being a new fact intervening) and adjudication thereof in the present action is not precluded or prejudiced. *Lord* v. *Litchfield,* 36 Conn. 116, 130; *Vincent* v. *Mutual Reserve Fund Life Asso.,* 77 Conn. 281, 285, 58 Atl. 963.

The assignments of error relating to the ruling on demurrer and those concerning the claims of law made on the trial raise identical questions, the general claims of the appellants being (1) that the reverter provision in the deed is void as to the entire freehold estate because of contravention of the statute of perpetuities in effect at the date of the deed, or (2) is void as to the moiety of Amos Hubbell which was conveyed by his executors, not only for the above reason but also because the creation of such reverter was beyond the power and authority of the executors; also (3) that the relief prayed for and granted amounts to the enforcement of a forfeiture. No question is made as to

the right of the present plaintiffs to bring this action as representatives and on behalf of the heirs.

The validity of the provision for reverter, so far as concerns the effect of the statute of perpetuities, depends upon the construction to be accorded this provision and the consequent effect to be given to it. A specially significant inquiry is whether, as to the interest of Amos Hubbell in the land conveyed, the reverter was intended to and did run to his heirs, or to the executors, as such or individually. At his death the legal title to his real property vested immediately in his heirs, subject to appropriation by his executors if, and to the extent that the personalty was not sufficient to pay the debts. *Griswold* v. *Bigelow* (1826) 6 Conn. 258, 266; *Phelps* v. *Miles*, 1 Root, 162; *Swan* v. *Wheeler* (1810) 4 Day, 137; 1 Cleaveland, Hewitt & Clark, Probate Law & Practice, §§ 191, 246, 460.

Amos Hubbell, during his lifetime, made a subscription of $200 toward the building of a contemplated church in Bridgeport, and this was proved and allowed as a claim against his estate. It appearing that the debts exceeded by $9000 the amount of the personal property, the Court of Probate ordered the executors "to sell so much of the real estate, with the widow's encumbrance thereon, either at public or private sale, as may be most beneficial to raise said sum of $9000." Richard Hubbell, who was owner in common with Amos of the land described in the deed, had likewise made a subscription for the building of the church. The disadvantages, so far as obtaining a fair value therefor, of a sale of the undivided interest of Amos in this tract are quite apparent. On the other hand, the conveyance of title for the very purposes for which the subscriptions were made has much to commend it from considerations both of business and logic, and the same may be said of the provision for reverter,

which is by no means uncommon in conveyances for such purposes. Such a reverter, if attached, logically would and legally must run to the heirs from whom the title was appropriated so far only as necessary to satisfy debts, especially as distinguished from executors, who had no title to the property and therefore could not retain any remnant of interest therein, but, were a mere agency for passing title from the heirs to purchasers at a sale for a specific and limited purpose, viz: the satisfaction of debts. Also, we should not attribute to the executors, unless unavoidably compelled to do so, a purpose to secure to themselves a reversionary interest to which they had no semblance of right and which would violate cardinal principles governing the conduct of fiduciaries. Executors and administrators "are trustees or agents, acting not for their own benefit, but for the benefit of all who have an interest in the estate." *Johnson* v. *Blackman*, 11 Conn. 342, 357. They are trustees—for creditors to the extent of the debts, and for the heirs. *Robbins* v. *Coffing*, 52 Conn. 118, 143; *Wilmerding* v. *Russ*, 33 Conn. 67; 3 Woerner, Law of Administration (3d Ed.) § 487, p. 1690; 23 Corpus Juris, 1170.

In construing the deed we are bound to consider the language and terms of the whole instrument in order to determine what was in the minds of the parties. *Loomis* v. *Heublein & Bro.*, 91 Conn. 146, 150, 99 Atl. 483. The language of the provision for reverter under consideration is "to the use and behoof of the original grantors, their heirs and assigns," but we should bear in mind that one of these grantors was Richard Hubbell, individually, and it was necessary to make the reverter available as to his interest as well as the part which had been owned by Amos. We think that the executors are fairly to be presumed and regarded as intending to act, and acting, and referring to them-

selves, in their representative capacity, including that of trustees and agents for the heirs of Amos, and that to construe the deed as meaning that the reverter should be for the benefit of, and run to, the heirs who had the title and from whom it was appropriated so far, only, as necessary for payment of claims, is not only consistent with such intent but also fully warranted by the terms of the deed, when read as a whole.

The statute of perpetuities in effect at the date of the deed read as follows: "In order to avoid perpetuities, it is hereby provided, that no estate either in fee simple, fee tail, or any lesser estate, shall be given by deed or will to any person or persons but such as are in being, or to the immediate issue or descendants of such as are in being, at the time of making such deed or will. And that all estates given in tail, shall be and remain an absolute estate in fee simple, to the issue of the first donee in tail." Connecticut Revised Statutes, 1796, p. 24. The appellants' contention that the reverter provision is void as contravening this statute depends upon whether the estate created was one on condition subsequent or on conditional limitation. One distinguishing characteristic as between these two forms of estates is that "a condition brings the estate back to the grantor or his heirs; a conditional limitation carries it over to a stranger." 21 Corpus Juris, 930. "In the case of a condition 'the estate or thing is given absolutely without limitation, *but the title is subject to be divested* by the happening or not happening of an uncertain event. Where on the contrary the thing or estate is granted or given until an event shall have arrived, and not generally with a liability to be defeated by the happening of the event, the estate is said to be given or granted subject to a limitation.' 2 Bouvier's Inst., 275; 2 Bla. Com. 155." *Warner* v. *Bennett,* 31 Conn. 468, 475. See also Revision of Swift's

Digest, Vol. 1, p. 96. The distinction between these estates, in nature and effect, and the reason for the application of the statute to one and not to the other is thus stated in *Brattle Square Church* v. *Grant,* 69 Mass. (3 Gray) 142, 148, a leading case on the subject: "One material difference . . . between an estate in fee on condition and on a conditional limitation, is briefly this; that the former leaves in the grantor a vested right, which, by its very nature, is reserved to him, as a present existing interest, transmissible to his heirs; while the latter passes the whole interest of the grantor at once, and creates an estate to arise and vest in a third person, upon a contingency, at a future and uncertain period of time. A grant of a fee on condition only creates an estate of a base or determinable nature in the grantee, leaving the right or possibility of reverter vested in the grantor. Such an interest or right in the grantor, as it does not arise and take effect upon a future uncertain or remote contingency, is not liable to the objection of violating the rule against perpetuities, in the same degree with other conditional and contingent interests in real estate of an executory character. The possibility of reverter, being a vested interest in real property, is capable at all times of being released to the person holding the estate on condition, or his grantee, and, if so released, vests an absolute and indefeasible title thereto. The grant or devise of a fee on condition does not therefore fetter and tie up estates, so as to prevent their alienation, and thus contravene the policy of the law which aims to secure the free and unembarrassed disposition of real property. It is otherwise with gifts or grants of estates in fee, with limitations over upon a condition or event of an uncertain or indeterminate nature. The limitation over being executory, and depending on a condition, or an event which may never happen, passes

no vested interest or estate. It is impossible to ascertain in whom the ultimate right to the estate may vest, or whether it will ever vest at all, and therefore no conveyance or mode of alienation can pass an absolute title, because it is wholly uncertain in whom the estate will vest on the happening of the event or breach of the condition upon which the ulterior gift is to take effect."

Examples of estates on condition are afforded by *Warner* v. *Bennett, supra; Bowen* v. *Bowen,* 18 Conn. 534; *Loomis* v. *Heublein & Bro., supra; Connecticut Spiritualist Camp-Meeting Asso.* v. *East Lyme,* 54 Conn. 152, 5 Atl. 894; *Scovill* v. *McMahon,* 62 Conn. 378, 26 Atl. 479. See also *North* v. *Graham,* 235 Ill. 178, 85 N. E. 267, 18 L. R. A. (N. S.) 624; *Mendenhall* v. *First New Church,* 177 Ind. 336, 98 N. E. 57.

In order to hold that the estate conveyed by the deed in question was of such a nature as to fall within the scope of the statute, we must determine that, instead of providing for a reverter to the grantors and their heirs, it contemplated and provided for a limitation over to third parties—here the executors, either individually and personally or, at least, in their capacity as executors independently and dissociated from representation of the heirs of Amos Hubbell. In *Brattle Square Church* v. *Grant, supra,* on which the appellants principally rely, land was devised to a church upon condition that if it be not devoted to the specified use it should revert to the estate and pass, by the terms of the will, to a nephew and his heirs. In *First Universalist Society* v. *Boland,* 155 Mass. 171, 29 N. E. 524, land was conveyed to a church on condition that if it was divested from the specified uses the title in the grantee should cease and be vested in certain named persons in specified undivided proportions. Similar gifts over, on the occurrence of a condition, to

persons other than the donor or his heirs characterized *Storrs Agricultural School* v. *Whitney,* 54 Conn. 342, 8 Atl. 141; *Cody* v. *Staples,* 80 Conn. 82, 67 Atl. 1, and other cases cited on this point. In the present case, since we have held, instead, that the reverter accrues to the heirs of Amos Hubbell and Richard Hubbell, it would not violate the statute of perpetuities even if the deed conveyed a determinable fee to the appellants or their predecessors. Here, however, the immediate grantee was "the Warden Burgesses and freemen of the Borough of Bridgeport" in trust for named persons and their associates, and, as the trial court ruled in deciding the demurrer, the conveyance therefore was one in trust for certain specific charitable uses, upon cessation of which the trust was to cease and the reverter take effect. The same considerations above mentioned apply to this lesser estate conveyed to the grantees, and the reverter is valid.

The deed provided, in effect, that in case of abandonment of the specified uses by the first beneficiaries (the appellants), the premises should be held in trust for and to the use of all such inhabitants of the towns of Stratford and Fairfield as shall associate themselves together for the purpose of maintaining public worship in a house on the premises, but if there shall be no such inhabitants who so associate and occupy the property, then it shall revert to the grantors, their heirs and assigns. The gift to the successor of the United Church was an attempt to make a charitable gift although made to a particular denomination. *Christ Church* v. *Trustees, etc.,* 67 Conn. 554, 565, 35 Atl. 552. So the gift in the case of reverter if the Society "shall cease as a body corporate to support the exercises of religion in such house," was a charitable gift, since it was made to a class of persons who might upon the reverter associate themselves together for the purpose

of maintaining public worship, and therefore was not within the statute of perpetuities. It fell within the estate designated as charitable uses. General Statutes, § 5081. In *Pierce* v. *Phelps*, 75 Conn. 83, 86, 52 Atl. 612, we adopted the rule that " 'gifts to religious and charitable corporations to aid in carrying out the purposes for which they are organized . . . do not offend against the statutes of perpetuities.' " The same rule applies to associations organized for a like charitable purpose. No estate granted solely for the charitable uses provided for in § 5081 of the General Statutes offends against the statute of perpetuities. The reverter would have been valid as a charitable use had it not been too indefinite and uncertain as respects the mode of selection of the beneficiaries and too uncertain as to the time when it is to be formed. Furthermore, the court finds that no such inhabitants have so associated for that purpose; it appears that these inhabitants were duly cited in, by representative, as defendants, default was entered against them, and the judgment precluding them from hereafter using the premises is not appealed from.

The appellants claim, further, that even if the reverter as to the undivided interest of Amos Hubbell be otherwise valid, it is void because the creation thereof was beyond the power and authority of the executors. The statute under which the order of sale was made authorized the judges of probate, when the debts and charges exceeded the personal estate, "to order the sale of so much of the real estate as shall be sufficient to pay the same . . . in such manner as shall appear to them to be most for the benefit of such estate." General Statutes, Compilation of 1808, Title LX, Chap. 1, § 22. The order, already quoted, was general in its terms. As we have pointed out at an earlier stage of this discussion, the plan adopted as

to this particular property appears to be more beneficial than an absolute sale of the undivided interest of the decedent. The satisfaction of the claim based upon the decedent's subscription was a good consideration for the conveyance, and, so far as appears, represented the fair value of the interest conveyed, and involved no preference to the claimant or prejudice to other creditors. The presumption is, in the absence of evidence to the contrary, that the executors acted within and pursuant to their authority in making the sale and conveyance as they did, and that their acts were ratified and approved by the Court of Probate. *Kiley* v. *Doran,* 105 Conn. 218, 227, 134 Atl. 792; *Bryan* v. *Hinman* (1811) 5 Day, 211, 216. The appellants must rely upon the validity of this order of sale and such approval of the terms of the deed under which their claimed interest in the land formerly owned by Amos Hubbell is based. They cannot attack the validity of the grant as to the reverter and at the same time rest their title to the land granted upon the validity of the grant. They accepted the grant upon its stated terms and must be bound by those terms while it stands unreformed. The principal contention of the appellants is that all of the decedent's interest should have been sold. Most of the cases cited in support of this proposition relate to attempts, in connection with the sale, to settle equities between the heirs or others, enforce contributions or effect adjustments among them, or are otherwise clearly distinguishable. *Eberstein* v. *Oswalt,* 47 Mich. 254, 10 N. W. 360; *Hewitt* v. *Durant,* 78 Mich. 186, 44 N. W. 318; *Pelletreau* v. *Smith,* 30 Barb. (N. Y.) 494; *Lindenberger* v. *Cornell,* 190 Ky. 844, 229 S. W. 54; *Kalteyer* v. *Wipff,* (Tex. Civ. App.) 49 S. W. 1055. We discover no persuasive precedent tending to hold illegal

or improper such a sale and conveyance as that now under consideration.

This is an action to settle title to land and it affords all of the essentials of such an action under § 5113 of the General Statutes. *Gaul* v. *Baker,* 105 Conn. 80, 83, 84, 134 Atl. 250; *Foote* v. *Brown,* 78 Conn. 369, 377, 62 Atl. 667. This, and what has already been said as to representation, by administrators, of heirs, devisees, and legatees, is sufficient to dispose of the remaining reason of appeal, that the relief granted constitutes enforcement of a forfeiture by a court of equity.

In the earlier case—*First Congregational Society* v. *Bridgeport,* p. 38—this court says: "The strong wish of any court to which this application had been made, to decree a sale, . . . would be to grant the decree, for that would appear to be the best way to carry on the noble work which the First Congregational Society is doing with such phenomenal success." Similarly, in the instant case, had we untrammeled freedom of choice in the matter, our compelling inclination would be to hold the title to this real estate to be such that it could be made available, in some way other than by actual occupation for a house of worship, which as we have seen has become impracticable, to assist in maintaining the religious and philanthropic activities of these appellants, instead of vesting it in the heirs of Amos and Richard Hubbell, who, the plaintiff alleges in its complaint, "are widely scattered, too numerous to be made parties, . . . and in some cases are unknown." But, as we there stated, "the court does not act upon its mere will; it is controlled by the rules of law and knows no person. In this case its . . . duty is to determine what the grantors intended by their deed. . . . When it ascertains this, its judgment follows."

There is no error.

In this opinion the other judges concurred.