HENRY SEYMOUR vs. THE OVER-RIVER SCHOOL DISTRICT.

W, a district school teacher, received for a month's salary an order of the committee on the district treasurer, and transferred it, indorsed in blank, to a third person, who in good faith paid him the money for it. This had been the usual mode of monthly payment for two years that W had been employed by the district, and the delivery of the order was so understood by both parties. The district, before the order was presented to the treasurer and before it had received notice of the transfer, was garnisheed as the debtor of W. Held that the delivery of the order operated as payment, and that the district was not indebted to W at the time of the service of the factorizing process.

A district school teacher is not a public.officer within the meaning of the law exempting the salaries of such officers from attachment.

Nor is he an officer in the ordinary sense of the term. He is simply in the employment of the district.

A debt owed by a school district may be taken by foreign attachment.

W's salary as school teacher was $1,200 a year, but there was no express contract as to the time of payment. It was found however that it was the understanding of the parties that it should be paid in ten monthly payments of $120 each, at the close of each month of the school year of ten months, and that such had been the practice. Held that the salary was thus apportionable.

And held that when the last school day of a month had passed, the salary for the month was earned, and could be taken by foreign attachment, although the month had not expired.

[Argued November 5th, 1885—decided February 19th, 1886.]

SCIRE FACIAS upon a process of foreign attachment; brought to the Court of Common Pleas, and tried before *Hall, J.* Facts found and judgment rendered for the plaintiff for a part of his demand. Both parties appealed. The case is sufficiently stated in the opinion.

*J. H. Perry*, for the plaintiff.

1. The order of November 3d, 1883, although negotiable in form, was not so in law. 1 Daniel on Negotiable Instr., § 427; 1 Dillon Mun. Corp., § 487; *Smith* v. *Inhab. of Cheshire*, 13 Gray, 318; *Allison* v. *Juniata County*, 50 Penn. St., 353. Being non-negotiable and no notice of the assignment having been given to the district, the money due Wigham at the time it was given was taken by the attachment. *Bishop* v. *Holcomb*, 10 Conn., 444; *Fanton* v. *Fairfield Co. Bank*, 23 id., 485.

2. Wigham's salary was not exempted from attachment by reason of his being a teacher of a public school, nor because his salary was due from a school district. *Bray* v. *Wallingford*, 20 Conn., 418; *New Haven Saw Mill Co.* v. *Fowler*, 28 id., 103, 110; *Flagg* v. *Platt*, 32 id., 216; *Rodman* v. *Musselman*, 12 Bush, 354.

3. It is claimed by the defendant that there was no proof that Wigham kept a school register, which by the statute is made a condition of his right to recover his salary. But it was not for the plaintiff to prove that he kept such a register. In the absence of all proof on the subject it would be presumed that he did his duty. *Rex* v. *Hawkins*, 10 East, 216; 2 Phill. Ev., part 1, 298; 1 Greenl. Ev., § 40; *Spooner* v. *Payne*, 16 Jur., 367; *Booth* v. *Booth*, 7 Conn., 350; *Hartwell* v. *Root*, 19 Johns., 345; *Bank of U. States* v. *Dandridge*, 12 Wheat., 64. Especially would this presumption exist here, since the district had regularly paid him for two

years and a half, and has actually paid him a part of the very money now sued for.

4. The salary of Wigham was apportionable, and unpaid portions of it had been earned at the times of the several attachments. For two years Wigham had been paid $120 a month at the end of each of the ten months of the school year. There are two characteristic features of every payment: its amount and the time when it is to be made. The district, at the beginning of the third year, voted to employ him " at the same salary as last year." It could not be the same salary if it differed in the time of payment any more than if it differed in amount. A salary payable at the end of ten months is a very different consideration from one payable in installments at the end of each of them. Wigham accepted the employment thus tendered, and the court finds that " it was the intention and understanding of the contracting parties that Wigham should be paid $120 a month for the ten months of said school year of 1883, and that the same should be paid at the end of each of said months." The defendant, as the finding shows, in fact paid the salary monthly during the time covered by this suit. If the salary was payable monthly, each payment was compensation for a month's services, and was earned when those services had been rendered. The October salary was attached November 5th. The December salary was attached December 21st, " after the close of school for the month and term." The February salary was attached February 29th, " after the close of school on that day and after the close of school for that month." The services had, therefore, in each instance been fully rendered. And if the money had been earned it became a debt, even though not payable till a later day, and could be taken by foreign attachment.

*J. S. Seymour*, for the defendant.

1. The salaries of public officers and all such profits as a man receives in respect to the performance of a public duty are, from their very nature, exempt from attachment and incapable of assignment. *Flarty* v. *Odlum*, 3 T. R., 681;

*Lidderdale* v. *Duke of Montrose*, 4 id., 248; *Arbuckle* v. *Cowtan*, 3 Bos. & Pul., 321; *Barwick* v. *Reade*, 1 H. Bla., 627; *Wells* v. *Foster*, 8 Mees. & Wels., 149; *Collyer* v. *Fallon*, Turn. & Russ., 459; *Liverpool* v. *Wright*, 28 L. Jour., N. S., Cha., 868; *Buchanan* v. *Alexander*, 4 How., 20; *McLellan* v. *Young*, 54 Geo., 399; *Wallace* v. *Sawyer*, 54 Ind., 501; *Hawthorne* v. *St. Louis*, 11 Misso., 59; *Williams* v. *Boardman*, 9 Allen, 570; *Bliss* v. *Lawrence*, 58 N. York, 442; 1 Parsons on Cont., 194; 1 Wait's Act. & Defences, 361; 2 Story Eq. Jur. (12th ed.), § 1040 *e*.

2. A teacher in a public school of this state is a public servant, within the meaning of the law exempting the emoluments of those who perform public services from attachment. The public school system is a state establishment, grounded in the fundamental law. Const. of Conn., art. 8, sec. 2. The funds for the support of this system are public funds exclusively, derived almost exclusively from taxation, and in its support nearly half of the public moneys of the state are disbursed. The teacher may be chosen by a popular vote of the district, by ballot and check list. Gen. Statutes, p. 134, sec. 2; Acts of 1880, ch. 96, sec. 3. His duties and the qualifications he must possess are defined by statute and ascertained by a public board. Gen. Statutes, p. 132, sec. 1; id., p. 142, secs. 1, 2; Acts of 1875, ch. 59. His duties and obligations are of the highest character, on the faithful discharge of which depend, not merely the safety of the state, but the very existence of free institutions. But the decided cases sustain this proposition. *School District* v. *Gage*, 39 Mich., 484; *Hightower* v. *Slaton*, 54 Geo., 108; *State* v. *Mizner*, 50 Iowa, 145; *Lander* v. *Seaver*, 32 Verm., 114; *Spear* v. *Cummings*, 23 Pick., 224.

3. If Wigham's salary could be assigned, then it was assigned before the attempted attachments. All of these assignments were duly executed. If they were not effectual, it must have been so held on account of the fraudulent intent attributed to the parties by the court; and as to that intent we say it ought not to have been found at all because not pleaded. Rules under the Practice Act, p. 16, sec. 6.

4. The plaintiff took nothing by any of his attachments, because, at the time they were served, the school register had not been filled out for any part of the period for which his salary was attempted to be taken. Gen. Statutes, p. 143, sec. 2; Acts of 1875, ch. 59. This is a statutory prerequisite to the right to recover the salary, and if Wigham himself were suing for the money he would have to show that the statute had been complied with. His creditor, standing in his shoes, must take the same burden.

5. The engagement of Wigham with the district was an entire contract for one year, at a salary of $1,200, and was incapable of apportionment. *McMillan* v. *Vanderlip*, 12 Johns., 165; *Reab* v. *Moor*, 19 id., 337; *Daily* v. *Jordan*, 2 Cush., 390. The intention and understanding of the parties referred to in the finding as to the manner of payment are not sufficient to incorporate those elements into the formal vote of the district, since it is not found that the parties so incorporated them. On the contrary it is explicitly found that there was no express contract other than that contained in the resolution itself. But were it otherwise, the district could not bind itself at that time to pay its teachers once a month, because the statute at that time provided that they should be paid at the end of each term, after it had been ascertained, and a certificate to that effect given, that the schools had been kept according to law, and does not provide any other time of payment. Gen. Statutes, p. 145, sec. 11. It has since been provided that teachers may be paid once a month. Acts of 1885, ch. 67. But that does not apply to this case.

6. If the salary could be apportioned at all, it could not be so apportioned that any salary for December could be attached on the 21st of December, or so that any salary for February could be attached on the 29th of February. If the intention and understanding of the parties were allowed to be of controlling force as to the time of payment, the finding is that $120 should be paid at the end of each of the ten months of the school year. It is further found that both the 21st of December and the 29th of February were

school days. And while it is found that the processes served respectively on these days were served after the close of school on these days, it is not found that the duties of the teacher were then ended for the month. Nor is there any presumption of law or fact that they were ended when the formal session of the school closed. Indeed the contrary appears to be the import of the finding, since the intention that $120 should be paid at the end of each month cannot easily be made to mean that Wigham was entitled to it, and that he or anybody else could sue for it during the month. Both the orders for further attachment were therefore prematurely served.

CARPENTER, J. This is a suit of *scire facias*. A process of foreign attachment was served on the defendant, November 5th, 1883, as the trustee and debtor of one Wigham, a teacher in the defendant district, factorizing his salary for the month of October preceding. Afterwards his salary for December and February was factorized by service of two orders for further attachment, one served December 21st, 1883, the other February 29th, 1884. The Court of Common Pleas held the defendant liable as to the second and third attachments, and not liable as to the first or original attachment. Both parties appealed.

First, as to the plaintiff's appeal. On the 3d of November, 1883, the committee of the district drew an order on the treasurer thereof, payable to the order of Wigham, for his salary for the month of October, and delivered the same to him. The salary of Wigham was usually paid to him by such orders. On the same day Wigham indorsed the order in blank, and delivered it to S. E. Olmstead, who, in good faith, paid him the money thereon. None of the officers of the district were notified of the transfer to Olmstead until the treasurer paid the order to him on the 14th of December. When the factorizing process was served, November 5th, the treasurer disclosed to the officer an indebtedness of the district to Wigham in the sum of $120.

The court overruled the claim of the plaintiff that the

defendant was liable for the salary for October, and held that the delivery of the order to Wigham, transferred and paid as aforesaid, was in law a payment of the salary for the month of October before the first attachment by the plaintiff.

We think the facts stated are equivalent to an express finding that the order was given by the district and received by Wigham in payment. His salary was " usually *paid* to him by such orders." He had been in the employ of the district for more than two years, and was accustomed to receive his pay in orders on the treasurer. The district had adopted that mode of payment, in which Wigham acquiesced, and which was continued after the suits were brought. The salary for November was paid by a similar order ; and so was the salary for each of the months of December, January and February following. That the parties intended by giving and receiving the order to give and receive a chose in action, evidence of an indebtedness, simply to change the form of the obligation, will not be presumed. It was a reasonable and convenient method of paying their bills. When an order was received the claim was liquidated and adjusted, and nothing remained to be done but to call upon the treasurer and receive the money. It was intended and understood by the parties *as payment*, as much so as receiving a town order or bank check. The order was regarded and treated as cash, not only by the parties, but by Olmstead, who received several of them. To regard it otherwise, to treat the indebtedness as still subsisting, would mislead and operate as a snare. When therefore the judge says that he overruled the claim of the plaintiff, and held that the order so given and paid was in law a payment, his language imports not merely a legal conclusion, but, taken in connection with the facts, an actual payment ; especially as he made such payment the foundation of his judgment.

The supposed error is not manifest, and the judgment on the plaintiff's appeal is not reversed.

As to the defendant's appeal.

1. It is claimed that the court erred in holding that the

teacher was not a public officer within the meaning of the law exempting the salaries of such officers from attachment. We think the court did not err in this respect. It will be noticed that the claim is not that the defendant is not liable as garnishee. That it may be so liable is practically conceded; and well it may be. In *Bray* v. *Wallingford*, 20 Conn., 416, it was expressly held that a town is so liable; and doubtless for the same reasons other territorial corporations would be liable. We think school districts in respect to all matters within the scope of their powers must stand upon the same footing.

But the claim is that Wigham's salary is exempt for his sake or on his account. It is true that he was serving the public in a matter of great public importance. But not every one serving the public can claim that his compensation therefor is exempt from attachment. Mechanics and laborers employed in erecting school buildings are serving the public, but their wages are not on that account exempt from attachment. A teacher is not an officer in the ordinary sense of the word. He is not usually elected or appointed, but is employed—contracted with. He has duties to perform incident to his employment, but they are not official duties and he is not under oath. We see no good reason why his salary should not be liable for his debts, in the same way as the compensation of others employed by the district.

The argument drawn from the general nature of our school system, the division of the territory of the state into school districts, the pains taken to secure suitable persons to perform the duties of teachers, the supervision provided for through the local and state boards of education, the large amount of taxes raised for the support of schools, &c., fails to convince us, in the absence of any statute to that effect, that the legislature intended that a teacher's salary should be exempt from attachment. The statute authorizing debts to be attached is broad and comprehensive. It makes no exceptions, and none exist unless found in cogent reasons of public policy. While it may be the policy in some states to exempt teachers from the operation

of similar statutes, yet in this state the policy of the law has ever been to compel every man to pay his debts, and to that end to subject substantially all his property to attachment. That policy has its foundation in principles of justice, and before any class of persons can be declared exempt from its operation, reasons therefor of greater weight than those which support the policy must be shown. They have not been shown in this case.

2. It appears that Wigham assigned his salary for the months of December and February, by separate assignments, to Olmstead. These assignments in form complied with the requirements of the statute. Session Laws, 1878, p. 263. The second reason of appeal is that the court erred " in holding that said assignments were fraudulent or invalid on account of any fraudulent intent of the parties to them, in that no such issue was raised by the pleadings." The defendant's third defense alleges that the assignments were made to secure *bonâ fide* debts, as the statute requires, due from Wigham to Olmstead. That allegation is denied. On that issue the court found that " said assignments were neither given by said Wigham, nor received by said Olmstead, to secure a *bonâ fide* debt. They were given by said Wigham and taken by said Olmstead for the purpose of defeating the plaintiff's attachments, and for the purpose of securing to said Wigham his salary." We think that finding is responsive to the issue.

3. The defendant says that the court erred " in overruling the defendant's claim that the plaintiff took nothing by his attempted attachments, because it did not appear that said Wigham ever kept or filled out any school register, as required by law, or any register, or that he ever held a certificate from the school visitors of the town of Norwalk." The finding of the court is substantially as this reason assumes. Obviously there was no evidence on the subject either way.

This matter is in the pleadings only as it is involved in the question whether the defendant was indebted to Wigham. Upon the trial of that issue, with no evidence from

either party as to the register and certificate, the court might well find an indebtedness, upon the principle that it will be presumed that the law was complied with until the contrary appears.

4. The fourth reason is, that the court erred " in holding that the salary of said Wigham was apportionable or divisible, on the compulsion of said Wigham or of any attaching creditor."

The vote of the district was—" that the district employ Mr. H. B. Wigham as principal at the same salary as last year." And it is found that Wigham accepted the offer of employment made under that resolution, and that no express contract of employment other than that above stated was proved.

But the court further found as follows:—" From said resolution, and from the knowledge of the parties of the manner of the payment of the salary during the previous year, and from the manner of the payment to said Wigham during said school year of 1883, I find that it was the intention and understanding of said contracting parties that said Wigham should be paid $120 a month for the ten months of said school year of 1883, and that the same should be paid at the end of each of said months."

This finding does not seem to be inconsistent with the vote of the district, and it effectually disposes of the question of apportionment.

5. The next reason is that the court erred " in holding that, if apportionable at all, it could be apportioned so that at the time of the attempted attachments any sum was due or subject to attachment beyond the amounts theretofore paid to said Wigham."

Under this reason it is claimed that the salary for December was not due on the 21st day of the month, when the second attachment was served, and that the salary for February was not due on the 29th of that month, when the third attachment was served; and therefore that the plaintiff took nothing by those attachments.

We think this claim is untenable. All the service that

Wigham was required to render during those months had been rendered. His salary had been earned and the debt existed. Whether payable then or afterwards was immaterial. An existing debt is liable to attachment although it may not be presently payable.

6. The last error assigned is, that the court erred " in finding the material facts of the defendant's second defense true, and yet rendering judgment for the plaintiff, in that no issue of law on that defense was raised by the pleadings."

The vital point in this defense is that Wigham was a " public officer." It is not claimed that the other facts therein stated without this constituted any defense. The court found in effect that the allegation was not true in law or in fact. That negatives the defense, and the court committed no error in so deciding.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.