The City of New London *vs.* The New York, New Haven and Hartford Railroad Company.

Second Judicial District, Norwich, April Term, 1912.

Prentice, Thayer, Roraback, Wheeler and Holcomb, Js.

In a suit to enjoin a railroad company from erecting a fence on or near a highway crossing, the plaintiff must establish the existence of the highway at the place in question.

Under an allegation that among the public highways within the city is one known as Maple Avenue, across which highway the defendant railroad company threatens to erect a fence, the plaintiff may show that the locus was a public highway, whether as part of said avenue or of another and older highway.

The parties entitled to a private way of necessity over the tracks of a railroad company, may prevent the erection of a fence which obstructs the right of way, in a suit brought by them for that purpose.

In order to establish the fact that a highway was one not originally laid out by the General Assembly or County Court, but was one so laid out as to be subject, under the statute (§ 2056), to discon-

tinuance by the selectmen with the approbation of the town, it is not always necessary that direct evidence should be offered to that effect.

In the absence of proof to the contrary, the presumption of law is that a town and its officers in discontinuing a highway act in accordance with law.

This presumption serves the purpose of evidence in making out a prima facie case.

Such a presumption is strengthened by the public character of the act done, the length of time it has passed unchallenged, and the cessation of public use following the discontinuance of the highway.

The fact that the only map of an old highway is on file in the town clerk's office—the lawful place of custody in the case of a road laid out by the selectmen with the approbation of the town—would, after a long lapse of time (in the present case sixty-four years), and in view of the nonuse of the road, justify the conclusion as one of fact that such was the original source of the layout.

The approbation of the town to the discontinuance of a highway may either precede or follow action by the selectmen.

In discontinuing a highway, the statutory method must be strictly followed, and the approbation of the town must be of the precise act of discontinuance made by the selectmen.

In determining what road was discontinued, the termini are the most distinctive marks, and are not controlled b a statement of the length of the road.

*Argued May 8th—decided July 19th, 1912.*

ACTION to restrain the defendant from obstructing a public highway, and for damages, brought to and tried by the Court of Common Pleas in New London County, *Waller, J.*; facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

Prior to 1807 and down to 1844 there existed a public highway, known as Harbor's Mouth Road, in length more than ninety rods, extending from a point about one hundred and twenty-five feet below the railroad cut at a turn in the road at what is now Pequot Avenue, in the city of New London, in a southerly and easterly direction, passing near to the Simmons house and ending at the beach between the Rogers house and the Sprague house.

On October 7th, 1844, the town of New London voted that the selectmen take up the matter of changing the Harbor's Mouth Road from the said turn below the fort gate as far as where the road now comes out at the beach; and at an adjourned meeting held October 21st, 1844, voted that the selectmen proceed to make a layout in alteration of the present course of the Harbor's Mouth Road from the turn in the road below the fort gate to the beach south of John Rogers' house.

On November 13th, 1844, the committee appointed to survey and lay out the new road reported to a special town meeting that they had laid out said road, beginning about five hundred feet south of the fort gate and extending southerly near the northeast corner of John Rogers' house, and thence south to the corner of James A. Keeney's garden, where it intersects the old road; the whole distance being ninety and one half rods.

A proposal of John Rogers to construct the road accompanied this report. The town voted to accept the proposal. This road is now Pequot Avenue. The selectmen incorporated in the notice for a town meeting to be held October 6th, 1845, the propriety of discontinuing the old road leading to the Harbor's Mouth. And on said day the town voted "that the old road to the Harbor's Mouth be discontinued."

On June 20th, 1846, the selectmen duly filed a certificate, reciting that they, with the approbation of the town, as expressed by the vote of its inhabitants at said meeting of October 6th, 1845, had discontinued the old road leading from the city of New London to the Harbor's Mouth from the place where the new road intersects said old road at the northerly end to the wall dividing the land of David Sprague and John Rogers, the whole distance being sixty rods more or less.

The new road took the place of the old road between these points. The old road referred to in said several

votes, proposal, and certificate was the same road, viz: the portion of the Harbor's Mouth Road from the turn in the old road southerly to Green's Harbor at a point near the beach south of John Rogers' house and near the corner of James Keeney's garden, between the Sprague and Rogers houses, where it intersects the said Pequot Avenue.

Between 1849 and 1851 the New Haven and New London Railroad Company constructed its single track railroad, and this was double-tracked in 1891. Its roadbed crossed the old Harbor's Mouth Road at two points, one at Maple Avenue, the locus in question; the other south of this point, and not far from the Rogers house. After the construction of the railroad, the old road south of the Simmons house ceased to be used.

The old road from the Simmons house north was used from the time of the discontinuance to 1881 as a sole way of access between said house and Pequot Avenue, at the turn in the old road, by the occupants of the Simmons house and the owners of lands adjoining the railroad on the west, and was a way of necessity, being the northernmost crossing of the old road by the railroad.

The Williams, who owned west of the railroad on both sides of what was afterward Maple Avenue, and the owners of the Simmons property agreed, in about the year 1881, that the use of the old road from the east side of the northernmost crossing should be abandoned by the Simmons, and in place of it they should use the way leading from Pequot Avenue to said crossing.

There had been a cart path leading from the Dawson Woods, located west of the Maple Avenue crossing, to the west side of said crossing prior to 1881, and until 1886 a barway was maintained on the west side of the crossing. A cart path was in use from Pequot Avenue to the railroad crossing in 1881.

In 1886 Maple Avenue was laid out and opened for public use from the west side of this crossing to Willetts Avenue. And from this time on the public travelled upon said Maple Avenue across said railroad crossing to Pequot Avenue. The said Maple Avenue crossing, so-called, being the locus in dispute, is in the same place as the northernmost crossing of said railroad, and is the same crossing used in connection with said way by necessity. The defendant railroad has never dedicated any portion of this crossing as a highway, and has always maintained planking over this crossing.

*Michael Kenealy*, for the appellant (plaintiff).

*Hadlai A. Hull*, with whom was *Charles Hadlai Hull*, for the appellee (defendant).

WHEELER, J. The city of New London seeks to restrain the defendant railroad from erecting a fence on or near the railroad crossing over one of its public highways known as Maple Avenue. It was therefore the duty of the plaintiff to establish the existence of this public highway at this crossing. It attempted to do this on the trial by showing (1) that the public had acquired, by user or dedication, the right to travel over this crossing, (2) that this was a highway, because a part of the old road, known as the Harbor's Mouth Road, or Old Harbor's Mouth Road.

The attempt in support of ground one was confined to proof of acts subsequent to Public Acts of 1883, chapter 107, § 2. The court excluded the offer because of this Act, providing that "whenever a new highway or a new portion of a highway shall hereafter be constructed across a railroad, such highway or portion of highway shall pass over or under the railroad, as the

railroad commissioners shall direct." No error is predicated upon this ruling.

The defendant claims that the allegation that this highway was a part of Maple Avenue precludes the plaintiff from proof that it was a part of another highway. We think, however, the allegations are broad enough to admit of proof that the locus was a public highway, whether as part of an old highway, or as part of a new highway. Further, we do not find this among the assignments of error.

The finding of the court that this crossing was a private way, and a way of necessity for the owners and occupants of the Simmons house from 1845, would, if the action had been brought by such owners, have prevented the erection of the proposed fence. But the case does not seek the protection of a private way, but of a public highway. The plaintiff's contention on the trial was that the locus was a part of the Harbor's Mouth Road, while the defendant contended that this old road had been legally discontinued.

Only two of the remaining assignments of error are pursued by the plaintiff. The first, the holding of the trial court that the Old Harbor's Mouth Road was discontinued, without evidence either that the road was not laid out by the General Assembly or the County Court, or that it was laid out by the selectmen with the approbation of the town. The second, the holding that the action of the town and selectmen effected a discontinuance.

It was not necessary that evidence should be offered that this road was not laid out by the court or General Assembly. In the absence of proof to the contrary, the presumption of law is that the town and its officials acted in accordance with the law. This presumption serves the purpose of evidence in making out a prima facie case. It is strengthened and enforced by the

public character of the business, the length of time these public acts have passed unchallenged, and the cessation of public use following the discontinuance.

The fact that the only map of this old road has been on file in the town clerk's office—the lawful place of custody had the road been in fact laid out by the selectmen with the approbation of the town—would, after this length of time and nonuse, justify the conclusion, as one of fact, that such had been its original source of layout.

The presumption, after this length of time and in the absence of evidence to the contrary, that the town and its officials acted within the law and in accord with their duty, finds expression in the legal maxims, *ex diuturnitate temporis omnia præsumuntur rite et solenniter esse acta,* and *Omnia præsumuntur legitime facta donec probetur in contrarium.* Our decisions furnish many examples of the application of the presumption. *Seymour* v. *Over-River School District,* 53 Conn. 502, 510, 3 Atl. 552; *Keating* v. *Macdonald,* 73 Conn. 125, 130, 46 Atl. 871; *Hamilton* v. *Smith,* 74 Conn. 374, 377, 50 Atl. 884; *State* v. *Main,* 69 Conn. 123, 140, 37 Atl. 80.

The precise question here raised is not an open one in this State; it was decided adversely to the defendant's claim in *Brownell* v. *Palmer,* 22 Conn. 107, and the argument of that opinion requires no further elaboration.

The selectmen could discontinue only with the approbation of the town. Statutes, 1838, pp. 344, 346. This might be given before or after action by the selectmen. The method of discontinuance provided by statute must be strictly followed. *Greist* v. *Amrhyn,* 80 Conn. 280, 68 Atl. 521. Approbation of the town must be of the precise act of discontinuance made by the selectmen. *Welton* v. *Thomaston,* 61 Conn. 397, 399, 24 Atl. 333.

The single particular in which the discontinuance is said to be defective is that the selectmen discontinued a

part of the old road, while the approbation of the town was given to its discontinuance for its entire length. The length of road discontinued, given in the vote of the town as ninety and one half rods and in the certificate of the selectmen as sixty rods, does not control in law. The termini are the most distinctive marks of the portion discontinued. *Clark* v. *Middlebury*, 47 Conn. 331, 335. As we read the finding, the vote of discontinuance by the town and the action of the selectmen related to the same road, and the same portion of the road, and we are not at liberty to construe these votes, were we so inclined, contrary to this definite finding. The presumption of regularity in official action, coupled with the nonuse since 1845 of the old road as a public highway, would, at this interval of time, make any other conclusion unsupportable.

There is no error.

In this opinion the other judges concurred.