JOSEPH F. KILEY *vs.* FRANCES DORAN.

Third Judicial District, New Haven, June Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, JS.

In June, 1902, K, an attorney, acting on behalf of himself as the guardian of five of the seven minor sons of his deceased brother-in-law and on behalf of S, who was guardian of the other two, signed an instrument which recited that he had received from the defendant the sum of $500 to be applied on the purchase of certain land which constituted a portion of his brother-in-law's estate and which was to be conveyed to G, the defendant's uncle, as soon as the estate was settled, subject to a savings-bank mortgage of $700, that being the balance of the purchase price which G had agreed to pay. Prior thereto the Court of Probate had ordered the sale of the property, upon the application of K and S. When the $500 was paid, G went into possession and control of the property and so remained, without objection from any source, until his death in 1923, when the defendant, as his executrix and devisee, succeeded to his rights.

Kiley *v.* Doran.

Although repeatedly requested to take care of the matter, K did not obtain a deed of the property for G; and after K's death in 1916, his widow and sons were frequently consulted concerning it, but nothing further was done except that in the year after K's death, the defendant, fearing the loss of the $500 already advanced by her, paid to K's son, an attorney, $700 in cash as the balance of the purchase price for the benefit of the heirs of the estate, and the son turned the money over to his mother, K's widow, but the heirs refused to receive it, and she placed it on deposit in a local bank, where it has since remained. After 1917 the plaintiff, who was one of the heirs and who, prior to 1908, when he became of age, was one of the wards on whose behalf K had acted, purchased whatever interests his brothers had in the premises; and in 1924 commenced the present action of ejectment to recover possession. *Held:*

1. That, after the payment of the $500 in June, 1902, G owed no further duty until the tender to him of a deed from the estate or from the heirs; and that since this condition had never been performed, neither G nor the defendant had been guilty of laches in withholding the balance of the purchase price.

2. That the laches lay with the plaintiff who, for more than sixteen years after the attainment of his majority, had slept upon whatever rights he might have had, during which period those most conversant with the situation had died and the benefit of their testimony become lost to the defendant.

3. That under all the circumstances of the case, including the relationship of the parties and the fact he was acting in an essentially fiduciary capacity and in execution of a mandate of the Court of Probate, K must be presumed, in the absence of evidence to the contrary, to have been fully authorized to make the contract of sale on behalf of the two wards of S.

4. That the defendant was entitled to judgment upon her counterclaim, ordering the delivery to her by the plaintiff of a warranty deed of the premises upon her release to him of all interest in the $700 which she had transferred to K's widow.

Argued June 4th—decided October 18th, 1926.

ACTION in the nature of ejectment, brought to the Superior Court in Fairfield County and tried to the court, *Ells, J.;* judgment rendered for the plaintiff, and appeal by the defendant. *Error, and cause remanded with direction to enter judgment for the defendant in accordance with this opinion,*

*Thomas M. Cullinan,* with whom was *William L. Tierney,* for the appellant (defendant).

*Thomas J. Ryle,* for the appellee (plaintiff).

HAINES, J.   The present dispute had its inception in a contract and receipt made the 9th day of June, 1902.   It reads as follows:

"Received, Stamford, June 9, 1902, from Frances Doran, five hundred dollars, to be applied on purchase price of land of Estate of John Kiley on Chapel Street, Stamford, an agreement for the sale of which has been made with John Gagan for the sum of $1200 and the deed of which is to be delivered as soon as the administration account of the Estate of James Kiley dec'd. can be settled.   At the time of delivery of deed John Gagan is to execute to said Frances Doran a mortgage for $500 subject to a mortgage for $700 to be made to the Stamford Savings Bank.

> Michael Kenealy and
> Catherine Shea
> Guardians, by
> Michael Kenealy."

There appears to be no disagreement as to the following facts: The title to this property was at this time vested in the seven minor sons of John Kiley, to whom it came by inheritance, but the estate of James Kiley, the deceased owner, was not settled.   Michael Kenealy was an attorney, as were his sons, Edward and Matthew, and all practiced law in the same office in Stamford.   Michael Kenealy was an uncle of the Kiley boys, was on terms of intimacy with them, educated them and some of them lived with him.   He was the legal guardian of five of them, and Catherine Shea was the guardian of the other two.   The oldest boy became of age in 1903, the plaintiff in 1908, and the

youngest in 1912. For some years and to the time this paper was executed, Gagan was one of the tenants of the four-family house in question. On March 29th, 1902, written applications were made to the Court of Probate; one signed by Michael Kenealy as guardian for five of said minors, and the other by Catherine Shea as guardian for the other two minors. These applications are identical in form and date. On April 10th, 1902, after due hearing on these petitions, the Court of Probate of Stamford passed an order for the sale of this property. And the same day Michael Kenealy gave five bonds of $2,000 each, with surety, to account for the avails of the sale of the five-sevenths interest of his wards, and Catherine Shea gave two bonds identical in form, for $2,000 each, to account for her two wards. Two pieces of real estate were involved, the first being sold to a third party, and the second being the real estate which is the subject of this litigation. Upon the payment of the $500 mentioned in the receipt, Gagan took complete control of the property, listed it for taxation in his own name, and assumed all other charges and collected and retained all rents and income, and continued to do so until his death in 1923, and neither the Kileys nor anyone in their behalf made any demand for or upon the property or any of the income therefrom. Miss Doran, the defendant, was a niece of the Gagans, the executrix and devisee under the will of John Gagan, and is the same party mentioned in the paper referred to. Since the death of Gagan she has been in possession and maintained the property and collected and retained the rentals. Michael Kenealy died in January, 1916. Mrs. Gagan, Catherine Shea, and Edward Kenealy and two of the Kiley boys were also deceased when this action was brought. No deed was ever given or tendered to John Gagan or to the defendant,

on behalf of the Kileys, though they asked Michael Kenealy on several occasions for the deed. His reply was, in effect, that he would attend to the matter as soon as he could get around to it. Mr. Kenealy died in 1916 without doing so. Thereafter both his sons gave more or less attention to the matter. The year after his death, his son Edward informed Miss Doran that she "was in a fair way to lose the $500" which she had loaned Gagan when the contract was made in 1902. As a result of this suggestion, she paid Edward $700 in cash. The Kileys later refused to accept this money, and the plaintiff soon after began to buy the interests of his brothers and so acquired all of them. The $700 was turned over by Edward to his mother, who was the executrix of the will of Michael Kenealy, and she deposited it in a trust company where it has since remained. From an examination of the record, it becomes apparent that the significance and importance of many of the challenged paragraphs of the finding are dependent upon the construction the court puts upon the contract. On the other hand, if the defendant's construction of the contract is correct, then many of these paragraphs of the finding become unimportant.

The court held that by the terms of the contract, Gagan assumed an obligation to pay $700 more to the Kileys before he could become the owner of the property, and that it was incumbent upon him to proceed within a reasonable time to do this in fulfilment of his obligation to them. The conclusion logically followed that, not having so performed for more than twenty-one years, Gagan had been guilty of laches, and the court so finds in one paragraph, and adds the conclusion that Gagan had thus forfeited and abandoned the contract. We are unable to concur in the trial court's interpretation of the contract. When $500 was ac-

cepted by Michael Kenealy and this paper drawn by him and executed and delivered to Gagan, the latter owed no further duty to the Kileys, until they tendered him a deed, and, by the contract, they were bound to do this as soon as the administration account of the estate of James Kiley, deceased, could be settled. They have failed and neglected to do so, and the sole responsibility for the delay must rest upon them.

A detailed and careful study of the transcript of evidence before us, satisfies us that some of the paragraphs of the finding, which are covered by the reasons of appeal, should go out. Some of them are not supported by evidence, and some are legal conclusions, while others become quite unimportant in the construction we put on the contract. For these reasons we strike out paragraphs thirteen, the last four words of twenty-seven, twenty-nine, the last sixteen words of thirty, thirty-one, thirty-eight, forty, forty-six, forty-seven, forty-eight, fifty-one, sixty-four, sixty-five, sixty-six, sixty-seven, sixty-nine, seventy, seventy-two, the third word in seventy-seven, eighty, eighty-one and eighty-two. Paragraph seventy-nine, to the effect that the plaintiff was the owner in possession February 3d, 1923 (upon the death of Gagan) and was dispossessed by the defendant, is a legal conclusion which we eliminate from the finding on our own motion. The following paragraphs of the counter finding are supported by evidence, which was not disputed upon the trial: Paragraphs eleven, fourteen, seventeen, eighteen, twenty, twenty-two, twenty-three, twenty-eight, thirty-four, forty-three, forty-five and forty-seven, and these are added to the finding. Briefly stated, they are to the effect that April 10th, 1902, the Court of Probate of Stamford passed an order authorizing the sale of two adjoining pieces of property belonging to the Kiley estate, one of which was the

property in question. When the claimed sale was made by Michael Kenealy, the $500 paid him, and the receipt (Exhibit 1) drawn and executed, he handed it to Gagan, saying: "Mr. Gagan the place is now yours," and from that time Gagan exercised all acts of an owner in possession. Miss Doran, the defendant, in 1908 or 1910, in behalf of Gagan, asked Michael Kenealy when he could have his deed of the property. Mr. Kenealy replied, in effect, that he would attend to it as soon as he could get to it. On several other occasions Gagan personally renewed his request for the deed, with the same result. At different times, Gagan claimed to others that the property was his. No offer was ever made to Gagan by Michael Kenealy or any of the Kileys, to furnish this deed, nor has a return of the $500 or the $700 ever been tendered. In 1916, Mrs. Michael Kenealy informed the plaintiff that she had the $700 which belonged to the Kiley boys, as the balance of the price of the Chapel Street property. After the death of Michael Kenealy, the sons Edward and Matthew, together and individually, conferred with the defendant in their office concerning the interests of Gagan and the Kiley boys in connection with this property. The Kiley boys made no claim on Michael Kenealy's estate, and the plaintiff admits he owed them nothing at his death.

The remaining reasons of appeal, based upon the refusal of the trial court to grant defendant's motion to correct, cannot be sustained.

Before proceeding further, we refer briefly to the issues raised by the pleadings.

The complaint, in the usual form of an action of ejectment, sets up that the plaintiff was the owner of and possessed this property in February, 1923, after the death of Gagan; that he was then wrongfully dispossessed by the defendant (the devisee and executrix

of the will of Gagan), who is depriving the plaintiff of the rents and profits of $600 a year. The plaintiff claims to recover the possession and $1,000 damages. The defenses made by the defendant are, in substance, a general denial, adverse possession, the statute of limitations, and laches of the plaintiff and his assignors. By counterclaim the defendant then sets up the original Kiley ownership, Gagan's purchase June 9th, 1902, —the date of the receipt, again affirms the facts constituting adverse possession, and the running of the statute of limitations, and prays an adjudication in equity that defendant is the owner and that a deed be given her, and that the plaintiff be estopped from asserting claim to the property.

On the finding as corrected, we proceed to a consideration of further reasons of appeal.

The conclusions of the trial court are, that Gagan did not perform, nor offer to perform, his contract within a reasonable time; that he never took title, and that his possession from 1902 was not under claim of title, but under license; that the plaintiff was not guilty of laches and was not estopped from bringing this action; that his and his brothers' refusal to accept the $700 held by Mrs. Michael Kenealy was legal and proper; that Gagan never gained title by adverse possession, and that the plaintiff was now entitled to possession and $1,000 damages for rents and profits since the death of Gagan. All these conclusions are challenged by the defendant's second reason of appeal.

We have already indicated our non-concurrence in the trial court's view of the legal aspects of the contract. It is of importance to consider whether the two Kiley boys whose guardian was Catherine Shea, were bound by the action of Michael Kenealy in 1902. The trial court held they were not so bound. The record is bare of evidence as to any action by Cathe-

rine Shea, save her application for the order of sale and giving bonds for the proceeds, and we therefore consider the question in the light of these facts and others furnished by the finding, coupled with the presumptions of law thus raised. In the first place, Michael Kenealy was the uncle of these boys, and it is quite evident that he stood practically *in loco parentis* to them. He educated all of them, was their adviser and friend, and provided for their needs. One or more of them lived with him. He was the relative, friend and adviser of James Kiley—a part of the assets of whose estate was this property. The estate was unsettled, and was under the control of the Court of Probate of Stamford, and that court made the order for the sale of these two properties, one of which was thus sold by Michael Kenealy to another man, and the other to Gagan. So far as appears, neither Catherine Shea, the two minors for whom she was appointed guardian, nor this plaintiff, ever questioned the authority of Michael Kenealy to make this contract, in his lifetime or at any time from 1902 to the date of Gagan's death in 1923. It appears clearly and is not disputed, that all these minors had the full benefit of the $500, and $700 more is being held for their benefit; and it does not appear that the two boys whose guardian was Catherine Shea even now deny the authority of Michael Kenealy, but such denial comes solely from the plaintiff, who has acquired whatever interest they had in the property by assignment. Representing all the seven, the plaintiff admits having had the $500, part of the proceeds of this contract of 1902, and offers it as an offset to the rentals taken by Gagan. Likewise he admits that his aunt, Mrs. Michael Kenealy, informed him that the $700 belonging to all the boys was in her hands and was available to them. No disclaimer or objection having been made for twenty-one

years after Michael Kenealy made the contract in 1902, the plaintiff now seeks, after the principal parties are dead, to impugn the character of his uncle's act and so hold the $500, and at the same time get back the entire property, and $1,000 damages in addition. The acts of Michael Kenealy, which are now questioned, were done by him in an essentially representative and fiduciary capacity, and in carrying out a mandate of the Court of Probate, which had directed a sale of the property.

Under all these circumstances, equity and good conscience refuse, without proof, to entertain a claim of illegality or irregularity in his acts. The authority of Michael Kenealy in making the contract of sale with Gagan must and should be presumed to have been full and complete and all parties he claimed to represent are bound thereby,—the record being bare of evidence to support the plaintiff's claim to the contrary, while many of the facts recited tend strongly to support this conclusion. We therefore correct the finding to read that Michael Kenealy was authorized to make the agreement as attorney for Catherine Shea guardian. Our decisions furnish many illustrations of the application of similar presumptions. *Dawson* v. *Orange,* 78 Conn. 96, 118, 61 Atl. 101; *New London* v. *New York, N. H. & H. R. Co.,* 85 Conn. 595, 601, 84 Atl. 114; *Hamilton* v. *Smith,* 74 Conn. 374, 377, 50 Atl. 884; *Keating* v. *Macdonald,* 73 Conn. 125, 130, 46 Atl. 871; *State* v. *Main,* 69 Conn. 123, 140, 37 Atl. 80; *Seymour* v. *Over-River School District,* 53 Conn. 502, 511, 3 Atl. 552.

The defendant's counterclaim is based in part upon the plaintiff's laches, and prays equitable relief by estoppel against him.

The contract unquestionably contemplated that Gagan should become the owner of the equity upon

payment of $500. This he paid and he then and there became entitled to a deed of the property subject to a mortgage to the Stamford Savings Bank for $700, by which means Mr. Kenealy provided for the balance of the $1,200 which was the price of the property. The delivery of the deed to Gagan was to be made as soon as the estate of James Kiley could be settled. So far as Gagan was concerned, the contract was complete and no further duty rested upon him. The estate of James Kiley was settled in 1907, and for at least sixteen years this contract obligation to deliver the deed has rested, unperformed, upon the Kileys. Gagan made several efforts to obtain it, but was put off with a promise that it would be done later. It has never been done. The right to test Gagan's ownership accrued to the Kileys when the estate was settled in 1907, but no claim was ever made against him. Only after Gagan, Mr. Kenealy and the other principal witnesses were dead, the plaintiff now brings this action.

The plaintiff was represented by his guardian and counsel from the date of the settlement of the estate until he became of age in 1908. The finding makes it clear that he, in common with his brothers, has had the benefit of the $500 received by Mr. Kenealy from Gagan. Under these conditions he has neglected for sixteen years to question the claim of Gagan to this property. He has slept upon his rights for many years, and made it impossible, because of the death of the persons who could explain the matter, for this defendant to have the benefit of their testimony. This conduct is laches—an inexcusable delay in asserting a right. It is held to exist where there has been such delay in asserting a claim as naturally to prejudice him against whom the claim is made. *Waterman* v. *Sprague Mfg. Co.,* 55 Conn. 554, 574, 12 Atl. 240; *Millard* v. *Green,* 94 Conn. 597, 110 Atl. 177; *Fisk* v.

*Hartford,* 70 Conn. 720, 40 Atl. 906; *Allis* v. *Hall,* 76 Conn. 322, 334, 56 Atl. 637; *Byrne* v. *Schuyler Electric Mfg. Co.,* 65 Conn. 336, 355, 31 Atl. 833; *Cowles* v. *Bacon,* 21 Conn. 451, 467.

Whatever the plaintiff's right at law, the substance of the defendant's counterclaim abundantly supports her prayer for equitable relief, and is amply justified by the finding as corrected and our conclusions thereon. For this reason it becomes unnecessary to discuss in detail various alternative claims of law which are raised by the defendant. The $700 and its increment is the property of the Kiley heirs or of their assignee. This money, having been paid by the defendant and accepted on their behalf by their agent and attorney Edward Kenealy, must be considered as an alternative performance by both parties of that portion of the contract which provided that this sum be raised by a mortgage to the Stamford Savings Bank.

Our conclusions upon the whole record as corrected are, that the $500 paid when the contract was made and the $700 since paid by the defendant entitle the latter, under the terms of that contract, to a warranty deed of the property; that upon delivery thereof the defendant should give a valid release of all interest in said sum of $700, with all the increment thereon, to the plaintiff, and the plaintiff should be ordered to deliver said warranty deed to the defendant within thirty days after the entry of final judgment, and be forever barred of any claim, right, title or interest in the premises.

There is error, and the cause is remanded to the Superior Court with direction to enter judgment for the defendant upon the complaint and counterclaim in accordance with this opinion.

In this opinion the other judges concurred.