## THERESA VIGGIANA *vs.* THE CONNECTICUT COMPANY ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued February 3d—decided March 4th, 1937.

*M. J. Blumenfeld,* with whom, on the brief, was *DeLancey Pelgrift,* for the appellants (defendants Hatsing).

*Frederick J. Rundbaken* and *Morris Blumer,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellees (named defendant and Mahon).

BROWN, J.   The following material facts appear in the finding, no correction of which is warranted upon this appeal:   On the afternoon of January 14th, 1936, the plaintiff while riding in the defendant company's bus, operated by the defendant Mahon, southerly on Maple Avenue in Hartford, was thrown from her seat and injured by a sudden stop.   The accident occurred just north of the intersection formed by Morris Street, which intersects at right angles from the east terminating in Maple Avenue, and Franklin Avenue, which makes into the intersection diagonally from the southeast and terminates therein.   A white line painted on the pavement across Maple Avenue at right angles marked the north side of the crosswalk, which was a continuation of the northerly sidewalk of Morris Street. From a point well to the west of the center of the street in this line, twelve feet easterly from the west curb of Maple Avenue, a white mark six inches wide painted on the pavement parallel to this curb, extended northerly ninety feet.   Near the center of the inter-

section was an overhead traffic light, the north face of which had four lights, one green, one amber, one red, and a green arrow pointing west. This arrow was kept lighted at all times except occasionally when pedestrians were given the opportunity to cross Maple Avenue, and its purpose when lighted was to indicate that southbound traffic which was to continue along Maple Avenue beyond the intersection might go through. The other three lights operated as is customary with traffic lights, and were obviously intended to control the movement of traffic going south onto Franklin Avenue or turning left into Morris Street. The whole lay-out indicated that traffic to proceed into Franklin Avenue to the south, or to turn into Morris Street to the east, should keep to the east of the longitudinal white mark and be subject to control by the green, amber, and red lights, while traffic to continue along Maple Avenue to the south should keep to the west of this mark and be subject to control by the green arrow. This traffic light had been so maintained for several months prior to this accident.

Just before the bus approached the intersection, the defendant Mabel G. Hatsing operating the car owned by her husband the defendant Harry W. Hatsing as a family car, as she drove southerly keeping east of the longitudinal line, stopped behind two other cars at the intersection when the traffic light showed red. Meantime the green arrow signal was lighted and the bus as it approached the intersection to proceed along Maple Avenue beyond, proceeded in the middle of the lane west of the longitudinal line at about fifteen miles per hour. Just as the front of the bus came nearly even with the rear of the Hatsing car, Mrs. Hatsing without looking to her rear and without giving any signal of her intention so to do, started it forward and turning its front to her right, proceeded across the line

at an acute angle until most of the car was in the west lane. The defendant Mahon who had sounded no horn as he proceeded, and had no opportunity to do so after the Hatsing car started to pull out in front of him, applied the brakes of the bus suddenly and brought it to the quick stop precipitating the plaintiff from her seat. Mrs. Hatsing then became aware of the bus and immediately stopped her car. There was no collision, but only about eight inches remained between the front end of the bus and the right running board of the car when both had stopped.

The first "conclusion" of the court attacked by this appeal is, that this traffic light had been installed and was being maintained by the traffic authority of Hartford. The memorandum of decision which is made a part of the finding shows that there was no direct proof, either that this was the fact, or that the light was put up by anyone else. This is corroborated by the record. The witness O'Connor, a police officer of Hartford, however, responded to a question beginning: "Under your traffic control system and your white line . . ." this being one of several questions bringing out that, as the court found, traffic was directed and controlled by the traffic signal in connection with the white lines at this intersection, all of which were asked and answered without objection by these appellants. Not only was there no direct proof that anyone other than the traffic authority of Hartford installed the light, but there was no evidence from which this could be inferred. Upon this state of the record and there being no evidence that this was a trunk line highway, the court was warranted in inferring that the light had been installed and was being maintained by the traffic authority of Hartford.

This conclusion is further fortified by the presumption arising from other facts established by the finding

considered in connection with the statutes applicable to the situation. The intersection over which the traffic light was suspended, and the streets leading into it upon which the white lines were marked, were all a part of the highway system of the city of Hartford. The light and the markings were such as are provided for and referred to in §§ 74c and 75c of the Uniform Traffic Control Act (General Statutes, Cum. Sup. 1935, Chapter 25). The light had been maintained there for several months prior to the accident. This act, after providing in § 74c as to what constitutes the traffic authority of a city, and what official traffic control devices are, by § 79c (a) prohibits any person from using any unauthorized signal or marking in the highway which resembles an official traffic control device or signal, or which attempts to direct traffic, and by § 79c (b) authorizes the traffic authority without notice to remove any such signal or marking as a public nuisance. In the absence of proof to the contrary, the presumption of law is that the traffic authority of Hartford acted in accordance with the law. *New London* v. *New York, N. H. & H. R. Co.*, 85 Conn. 595, 84 Atl. 114. Therefore, even aside from the possible effect of the installation of the markings and signal in the place where they were, the continuance thereof to the time of the accident of itself gives rise to a strong presumption in support of the court's conclusion. *Seymour* v. *Over-River School District*, 53 Conn. 502, 511, 3 Atl. 552.

The remaining question on this appeal is whether the court erred in its determination of the duty resting upon the driver of the Hatsing car, which was the basis of its conclusion that her negligence caused the plaintiff's injury. The court held that the arrangement of the green arrow on the traffic light and the location of the longitudinal mark, in effect divided

Maple Avenue into two lanes or ways for southbound traffic, so that a vehicle proceeding in the westerly lane should not be regarded as passing on the same highway and to the right of vehicles parked in the easterly lane, but as traveling on a separate way; that therefore since the arrow showed green as the bus approached the intersection, it was the privilege and duty of its driver to proceed on through and that he was not negligent in so doing; and that the driver of the Hatsing car was negligent in that without looking back to see whether traffic was approaching in the lane to her right, and without giving any warning, she suddenly drove her car to her right into the lane and into the path of the bus, which was the proximate cause of the plaintiff's injuries. The appellants' claim in short is, that in proceeding as he did, the bus driver violated the rule of the road requiring an overtaking vehicle to pass to the left, and that therefore his negligence was the proximate cause of the plaintiff's injuries. The question so raised calls for the interpretation of §§ 75c and 636c of the Cumulative Supplement of 1935 as applied to the facts here.

Section 636c, after providing for the passing of vehicles meeting in the highway, continues: "Any person, when . . . operating . . . a vehicle on the highway . . . if he shall overtake another . . . shall pass on the left side of the person overtaken. . . ." A subsequent portion of the statute provides as to operation in turning left at an intersection, and another as to granting the right of way at an intersection. The rule of operation so prescribed with relation to each of the above situations, however, contains a qualification providing as an exception thereto, for control by one of the means respectively specified in connection therewith where such an agency exists. Thus when this is so, turning left at an intersection is subjected

to direction by local ordinance, traffic officer, signal or sign, and the granting of right of way thereat, to regulation by traffic officers. The exception as it relates to passing and overtaking is: "Upon approaching any traffic signal, the operator or driver of any vehicle shall follow the directions as given on the signal." The content of the statute, therefore, makes clear the Legislature's intent that the rules of the road prescribed therein, to the extent above stated, shall not prevail over control by traffic officer, signal, or sign, in those places where because of special hazard or for other reason, such agencies are employed. The sentence last quoted makes this intent particularly clear concerning the rule as to overtaking here in question.

Section 74c provides: ". . . 'official control devices' shall mean all signs, signals, markings and devices not inconsistent with this chapter placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic." The longitudinal line here was an official control device under this statute. Section 75c, in defining the meaning of signals by the light, provides: "(4) Red or 'Stop' with green arrow: Vehicular traffic facing such signal may cautiously enter the intersection only to make the movement indicated by such arrow, but shall not interfere with other traffic." The court properly concluded that the arrangement of line and signal light was effective to create two distinct traffic lanes, travel in the more westerly of which was controlled by the green arrow. In proceeding southerly therein the driver of the bus was warranted in passing to the right of the Hatsing car located as it was in the east lane with the stop signal thereof set against it, since he was thereby following "the directions as given on the signal" under the exception above quoted to the rule of the road. The only qualification

of this right of the bus driver to proceed, was that he use due care in the exercise of it. *Jackson* v. *Brown*, 106 Conn. 143, 146, 137 Atl. 725; *Rose* v. *Campitello*, 114 Conn. 637, 640, 159 Atl. 887. The concluding words of § 75c (4), "but shall not interfere with other traffic," have no application to the situation here presented. If Morris Street crossed instead of terminated in Maple Avenue and there were the same traffic signal, the green arrow would then indicate the right of a southbound car to turn west on Morris Street. Under such circumstances this provision would require that a car so turning yield to westbound traffic proceeding through the intersection and beyond on Morris Street. The court was therefore correct in its determination of the duty resting upon the driver of the Hatsing car, and in concluding that her negligence and not that of the bus driver caused the plaintiff's injuries.

Since this appeal is determined in the plaintiff's favor, her appeal from the judgment for the defendants Connecticut Company and Mahon, is not pressed.

There is no error.

In this opinion the other judges concurred.