JULIA BOHUN PIHUN, ET AL .

vs.

NICHOLAS KINASZ, EXT'R.

MIKE J. BOHUN, ET AL.

vs.

NICHOLAS KINASZ, EXT'R.

Superior Court    New London County    File #12454
#12403

Present:  Hon. CARL FOSTER, Judge.

B. J. Monkiewicz,          Attorney for the Plaintiffs.

Calkins & Troland,         Attorneys for the Defendant.

124 Conn. 543   MEMORANDUM FILED JANUARY 28, 1938.

FOSTER, J.   In this case the decedent left an estate consisting of two deposits in savings banks, totalling $8,326.69. He left a will, wherein he bequeathed to his widow $300, to his daughter $800, to his son $400 and to his friend Nicholas Kinasz, the executor of his will, $500.   The remainder of the estate he left in small bequests to relatives and friends, some of whom reside in Poland.

The executor employed no attorney to aid him in the settlement of the estate, but he testifies that until the present appeals were filed in this Court, he made frequent calls upon the Judge of Probate and was advised by her.

Helen Bohun, the widow, filed a claim with the executor against the estate, amounting to $3,794.   Rudolph Bohun, the son, filed a claim with the executor against the estate amounting to $2,389.   Both of these claims the executor allowed in full.   The executor filed his account on May 20, 1937.   This is Exhibit 7 and is as follows:

"DR

| | |
|---|---|
| To amt. as per inventory | $8,326.69 |
| To amt. interest | 89.84 |
| | $8,416.53 |

CR

| | |
|---|---|
| By paid Probate Court | $  150.00 |

| | |
|---|---|
| Day Publishing Co. | 10.85 |
| Dr. Lena | 102.50 |
| S. M. Prentis | 450.00 |
| Cement Vault | 77.15 |
| Polish Priest | 75.00 |
| Russian Priest | 45.00 |
| Cemetery (Chesterfield) | 40.00 |
| Expense of digging grave | 15.00 |
| Expense of wake | 25.00 |
| Foundation for monument | 37.20 |
| Expense for transportation at funeral | 32.00 |
| Widow's allowance | 360.00 |
| Monument | 645.00 |
| Executor's fee | ·500.00 |
| Helen Bohun | 3,628.41 |
| Rudolph Bohun | 2,223.42 |

$8,416.53"

This account was accepted and ordered on file by the Probate Court.

From such order of the Probate Court accepting such account Julia Bohun Pihun, Vincent Pihun, Catherine Pihun, Antonia Zaleska Jeszyk, Vincent Jeszyk, Mary Jeszyk Owic, John G. Jeszyk and Helen Bohun appeal upon the grounds (1) that an allowance of $360 should not have been paid to the widow of the decedent, (2) that the claim of Helen Bohun should not have been allowed, and (3) that the claim of Rudolph Bohun should not have been allowed. Mike Bohun, Mary Bohun and Helen Bohun, a niece of the decedent, appeal upon the grounds (1) that, though the estate appeared insolvent, the Probate Court failed to appoint commissioners to receive and pass upon claims against the estate, (2) that the claims of Helen and Rudolph Bohun were allowed, (3) that the claim of Helen Bohun is outlawed by the Statute of Limitations, (4) that the claim of Rudolph Bohun for services was not properly proved, (5) that the executor failed to include in his inventory of the estate a certain quarry, (6) that the payment of $645 for a monument should not have been allowed.

It is to be noted that the account accepted and approved by the Probate Court includes both ante mortem claims and post mortem claims.

In the list of claims allowed appears the claim of Helen Bohun as $3,794 and the claim of Rudolph Bohun as $2,389. The testimony is that these two persons were willing to accept the amounts appearing in the account, because there were not sufficient funds in the estate to pay them more. It does not appear that there was ever any proceeding in the Probate Court, whereby the executor was authorized by that Court to compromise these claims.

Before his decease, the decedent discussed with the executor the character of tombstone that he desired erected at his grave. The evidence is to the effect that the wishes of the decedent were observed, and the cost of the tombstone and its foundation was reasonable and these items were properly allowed. **Fairman's Appeal, 30 Conn. 205.**

As to the claim of Helen Bohun for $3,794 we examine first **section 5155 of the General Statutes, Revision of 1930,** the last sentence of which is as follows:

"It shall be the duty of the husband to support his family, and his property when found shall be first applied to satisfy any such joint liability; and the wife shall be entitled to an indemnity from the property of the husband for any property of her own that shall have been taken, or for any money that she shall have been compelled to pay, for the satisfaction of any such claim."

More than thirty years ago the decedent, Jacob Bohun, when he was 27 years of age, married Helen Bohun, she being at that time 15 years of age. They had two children, Rudolph, now about 32 years old, and Mary Bohun Bresnahan, now about 29 years old. For a time they lived in the state of New Jersey and later they came to Connecticut and bought some land in Niantic. While they lived in New Jersey, Nicholas Kinasz, the executor of the will of the decedent, lived with them as a boarder, but now for many years has lived in New London. All of the witnesses in the case testify that so long as Helen Bohun lived with her husband, he treated her with extreme cruelty. This testimony is uncontradicted. I am satisfied that he treated her worse than if she were his slave, worse than he did his domestic animals. For the sake of her children or for other unexplained reasons, she continued to endure such treatment until May 5, 1925, when the decedent thrust her out of their home with the statement to her and to others that he could get plenty of other women outside of

his home. Helen Bohun went to New York and was soon followed by her daughter. A short time later the son followed his mother and sister. After May 5, 1925 the decedent never contributed to the support of his wife or daughter. He did pay to his wife $1,000, which his wife had received from a relative, and which the decedent had used in the purchase of land in Niantic; but this was the payment of a debt and not a contribution towards support.

Helen Bohun did not abandon her husband, the decedent; she remained with him for many years, enduring brutally intolerable treatment, until on May 5, 1925 the decedent forced her to leave him. She even paid him several visits in his last illness. It was the legal duty of the decedent to support his wife. This duty arises not by contract, but by reason of the status of marriage. Seven dollars a week for her support is a reasonable sum. It appears that the decedent was at all times financially able to pay this sum. Helen Bohun paid such sum. By virtue of the statute she was entitled to recover this sum from the decedent up to the moment of his decease. **Smith vs. Smith, 114 Conn. 575.**

There is no statute of limitation affecting this claim. It does not arise out of contract. It arises from the legal duty of the marriage status and the right of action provided by the statute.

Helen Bohun had this right of action against her husband in 1925 after she had expended money for her support and until the moment of his death, unless she was guilty of laches in failing to pursue such right of action for so long a time.

"Laches in legal significance is not merely delay, but delay that works a disadvantage to another." **Mills vs. Mills, 119 Conn. 612, 621.**

Laches "is held to exist where there has been such delay in asserting a claim as naturally to prejudice him against whom the claim is made." **Kiley vs. Doran, 105 Conn. 218, 228.**

Laches consists in an "inexcusable delay in asserting a right." **Byrne vs. Schuyler Electric Mfg. Co., et al., 65 Conn. 336, 355.**

"Laches involves negligence. It arises from a failure in duty. Without such failure there can be no laches. It is 'inexcusable negligence and inattention' to one's interests." **Allis vs. Hall, 76 Conn. 322, 334.**

The failure of Helen Bohun to pursue her right of action against her husband during his lifetime did not constitute laches. He was as well able to defend against her claim during the last year of his life as he was during the latter part of the year 1925. Her failure to press her claim until after his decease does not constitute laches. She has a right to present to the executor and prosecute any claim against the estate that she had at the moment of her husband's decease. Moreover, in view of the overwhelming evidence as to the conduct of the deceased towards his wife, consisting of testimony of the claimant, her son and daughter and strangers, it does not appear that the decease of the decedent robbed the executor or the estate or the legatees named in the will of any evidence that could rebut such claim.

The executor correctly allowed this claim of $3,794, and in the form in which the account is drawn, it should have appeared as having been paid by the executor, rather than the amount of $3,628.41.

In considering the claim of Rudolph Bohun we are governed by the law that such claims "should be carefully scrutinized and found established only upon clear and satisfactory proof". **Yantz vs. Dyer, 120 Conn. 600, 602.**

We must consider not only the list of claims filed by the executor in the Probate Court (Exhibit 2), but also these claims as prepared by Rudolph Bohun for his attorney (Exhibits 14 and 15).

This claim consists of different items. Rudolph left his father shortly after the ejection of his mother from the home and worked in New York and New Jersey, until in 1929 or 1930 "work got scarce", and he came back to his father. He paid his father $200 for a small piece of land and upon it built a small bungalow with money that he had saved and money that he had borrowed. His father helped him build the bungalow, and the two lived together in it. Rudolph did the housework with the aid of his father and both paid the bills of maintenance. When his father became ill, Rudolph cared for him and at times took him to hospitals, to doctors and to other places. During his last illness the decedent undoubtedly required much care, but Rudolph did no more for him than a dutiful son would do under the circumstances that surrounded their life together. For a period they conducted a quarry business together. One of the claims of Rudolph is .

for the use of an old auto truck in this business. Rudolph in no way substantiates his claim, except by his own testimony. He has no books of account or memoranda of any sort. Even in his testimony he admits that the dates and periods of time are estimated by him. His testimony is not in accord with the claim that he presented to his attorney or with the claim presented to the executor. The executor supports Rudolph's claim by testimony as far as he can, for he obviously favors Rudolph, but his testimony is of little value. At no time did Rudolph ever present any claim to his father or ask his father for any money, and it was only after he discovered how little his father bequeathed him by will that he decided to present a claim to the executor of the will.

The claim of Rudolph Bohun is not established by such proof as the law requires and should have been rejected by the executor.

The claim by the appellants that the executor failed to include in his inventory a quarry owned by the decedent is without warrant in evidence.

In the will the executor appears as a legatee to the extent of $500. The account shows no balance for distribution. The executor makes a charge of $500 for his services as executor. This is an unreasonably large amount. This was a simple estate, requiring little time of the executor for its settlement. It consisted entirely of cash in two bank accounts. There were few bills to be paid. The only questions requiring solution were those of the claim of Helen Bohun and Rudolph Bohun. The executor testifies concerning much time spent by him in advising with the Judge of Probate. He should have consulted counsel. Had he done so, these appeals might not have been necessary. He testifies as to much time spent concerning the tombstone. If he spent such time, it was unnecessary.

Usually a fair and reasonable sum for an executor to charge for his services is two per cent of the appraisal of the estate; if the estate is small, possibly more; if the estate is very large, possibly less. In this case having in mind the time that the executor spent on these appeals and time that he will yet have to spend, and especially in view of the manner in which the executor has bungled the settlement of this estate, $250 is all that he should credit himself with in his account, and in his final account he will have credits not appearing in this account,

viz: a fair and reasonable fee of his attorney, who has acted for him in these appeals, costs taxed in this Court and some other minor items.

Viewing the account at the present time it should be as follows:

|  | DR. |
|---|---|
| To amount as per inventory | $8,326.69 |
| To amount of interest | 89.84 |
| Brought forward | $8,416.53 |

|  | CR. |  |
|---|---|---|
| Fees of Probate Court | $ 150.00 | |
| Day Publishing Company | 10.85 | |
| Dr. Lena | 102.50 | |
| S. M. Prentis, undertaker | 450.00 | |
| Cement Vault | 77.15 | |
| Polish Priest | 75.00 | |
| Russian Priest | 45.00 | |
| Chesterfield Cemetery | 40.00 | |
| Digging grave | 15.00 | |
| Wake | 25.00 | |
| Funeral transportation | 32.00 | |
| Monument | 645.00 | |
| Foundation of monument | 37.20 | |
| Widow's allowance | 360.00 | |
| Fee of executor | 250.00 | |
| Claim of Helen Bohun allowed | 3,794.00 | |
| Cash on hand for distribution | 2,307.83 | |
|  | $8,416.53 | $8,416.53 |

It does not appear in the account from which the appeals are taken that the estate is insolvent. It does not appear from the account as corrected that the estate is insolvent.

The claim of the appellants that the estate was insolvent is overruled.

The appeal in each case is sustained in so far as appears in this memorandum of decision.